IOWA LIFE INSURANCE COMPANY, Appellee, v. BOARD OF
SUPERVISORS OF BLACK HAWK COUNTY, Appellants.

CONSTITUTIONAL LAW:  Who May Question Constitutionality of
Law.  A county may not assess and exact taxes under an inappli
cable statute, and then, in an action by the taxpayer to recover the
unlawful exaction, defend on the ground that the statute under which
the county ought to have proceeded is unconstitutional.

*Appeal from Black Hawk District Court.*—H. B. BOIES, Judge.

JANUARY 15, 1921.

SUIT by the plaintiff, as a life insurance corporation organized under the laws of the state of Iowa, to recover taxes erroneously and illegally exacted from it by the defendant county, as alleged. There was a demurrer to the petition, which was overruled. The defendant, standing thereon, has appealed. —*Affirmed.*

*H. M. Havner,* Attorney General, and *E. J. Wenner,* County Attorney, for appellants.

*Alfred W. Mullen* and *Courtright & Arbuckle,* for appellee.

STEVENS, J.—The ground of recovery set forth in plaintiff's petition is the same as that involved in *Great Western Acc. Ins. Co. v. Martin,* 183 Iowa 1009. The broad contention of the petition is that the rate of taxation of plaintiff's shares of stock was specified by Section 1310 of the Code, whereas the defendant county exacted taxes from it in excess of the five-mill rate provided therein. The one defense interposed by the defendant's demurrer is that Section 1310 is unconstitutional and therefore void, in that it is discriminatory and out of harmony with other sections of the statute, especially Section 1305. The special section of the Constitution which it offends, as alleged, is Section 6 of Article 1, as follows:

"All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen or class of citizens, privileges or immunities, which upon the same terms shall not equally belong to all citizens."

Other kindred sections of the Constitution specified in the demurrer are Sections 2 of Article 8 and 30 of Article 3. The general purpose of all these sections of the Constitution is to provide for uniformity in the application of the laws to all persons alike, and to forbid discriminative laws for the assessment and collection of taxes for state, county, or road purposes.

While various sections of the statute are more or less involved in the discussion, the grounds of attack specified in the demurrer are confined to an alleged variance between Sections 1310 and 1305. Code Section 1305 is as follows:

"Sec. 1305. All property subject to taxation shall be valued at its actual value, which shall be entered opposite each item, and shall be assessed at 25 per cent of such actual value. Such assessed value shall be entered in a separate column opposite each item, and is to be taken and considered as the taxable value of such property, and the value at which it shall be listed and upon which the levy shall be made. Actual value of property as used in this chapter shall mean its value in the market in the ordinary course of trade."

So far as material herein, Section 1310, Code Supplement, 1913, is as follows:

"Sec. 1310. Moneys, credits and corporation shares or stocks, except as otherwise provided, cash, circulating notes of national banking associations, and United States legal tender notes, and other notes, and certificates of the United States payable on demand, and circulating or intended to circulate as currency, notes, including those secured by mortgage, accounts, contracts for cash or labor, bills of exchange, judgments, choses in action, liens of any kind, securities, debentures, bonds other than those of the United States, annuities, and corporation shares or stocks not otherwise taxed in kind, shall be assessed, and, excepting shares of stock of national, state and savings banks and loan and trust companies, and moneyed capital as hereinafter defined, shall be taxed upon the uniform basis throughout the state of five mills on the dollar of actual valuation, same to be assessed and collected where the owner resides. The millage tax here provided for shall be in lieu of all other taxes upon moneys and credits and shall be levied by the board of supervisors, placed upon the tax list and collected by the county treasurer, and the amount collected in the various taxing districts of the state shall be divided between the various funds upon the same pro rata basis as other taxes collected in such taxing district are apportioned."

It will be noted that, under Section 1305, provision is made for an assessment of the taxation value of all property at 25 per cent of its actual value. Under Section 1310, the property classified therein is to be assessed at its actual valuation, and is to be subjected to a straight levy of five mills on the dollar of such actual valuation. Section 1305 fixes no limit upon the rate of

levy. The contention of defendant is that Section 1310 discriminates in favor of the taxpayer classified thereunder, and that it is unconstitutional for that reason.

I. It is to be noted first that it does not appear upon the face of these sections which of them operates more favorably to the taxpayer. Clearly, Section 1310 assesses its class at a rate of valuation four times as high as does Section 1305. Whether the limitation upon the rate of levy compensates, or more than compensates, for this difference in rate of assessment, can only be ascertained by inquiry into facts outside of the statute. If we conceive of a taxing district wherein the general rate of levy is 20 mills, the operation of the two statutes would be absolutely equal. If the general rate were less than 20 mills, Section 1310 would operate more heavily upon its class than Section 1305. On the other hand, if the general rate were more than 20 mills, then Section 1305 would operate the more heavily. The practical fact doubtless is that the general rate is much in excess of 20 mills for most, if not all, of the taxing districts in the state. In any event, we should assume that the general rate in the defendant county was in excess of 20 mills; otherwise, there would have been no excess of taxes collected from the plaintiff over the amount actually due under Section 1310.

For the purpose of argument, therefore, let it be assumed that Sections 1305 and 1310 operate unequally upon their respective classes, and that Section 1305 operates the more heavily of the two. If we must say, therefore, that *one* of these sections is unconstitutional because of the inequality of their operation, which one shall we strike down—the lighter or the heavier one? To eliminate either one would leave the other uniform. If Section 1305 were eliminated, want of uniformity could not be charged against Section 1310. Furthermore, if a taxpayer were to assail one of these sections as unconstitutional, he would have to show, not only that it was discriminatory, but that it discriminated against him. If he were included within the classification of Section 1310, he would have to show a general rate of levy less than 20 mills, in order to gain a standing for attack upon it on the ground that it worked a discrimination against him. If a taxpayer not included in the classification of Section 1310 were to attack the constitutionality of either section, his

attack would necessarily be directed against the section which discriminated against *him*. If the general rate of levy were more than 20 mills, he might attack Section 1305; if less than 20 mills, he would have no grievance. In other words, *either* section would be alike subject to attack for unconstitutionality, if at all, by a taxpayer who suffered unlawful discrimination therefrom. Assuming, for the sake of argument, therefore, that these two sections are so variant in plan as to destroy the uniformity required by the Constitution, one is as instrumental to that end as the other. On this hypothesis, both would be unconstitutional while standing together, and neither would be unconstitutional if standing alone. The rivalry of each section is with the other section, and not with the Constitution. It is the duality of plan, if any, of the two sections that destroys the uniformity of the methods of taxation. If Section 1310, therefore, is to be deemed unconstitutional, it is only because it is one of an unconstitutional pair. The same observation applies to Section 1305. So far, then, as the mere unconstitutionality of these sections is concerned, each stands or falls by the same rule.

In pursuing this process of reasoning, we are assuming the theory of the defendant that these sections do present a variance destructive of constitutional uniformity. Whether this theory presents a correct view, we have no occasion to decide. If there were a mere conflict of statutes, rules of statutory construction might be found adequate to determine which section should override and control the other. But this would not be holding that the rejected section is unconstitutional. No other defense is presented to us.

This brings us to a crucial point which has been inadvertently overlooked by the parties. The attack upon these sections of the statute is made by the defendant county. It is not a taxpayer. It has never suffered discrimination by the operation of either or both of these sections. It never can suffer discrimination thereby. It is a mere collector of taxes thereunder, and perhaps a beneficiary thereof. The only power conferred upon it to collect or to receive taxes is conferred upon it by the very sections under attack and their co-ordinate sections. What does it avail the defendant to show the variance of the statutes as a ground of unconstitutionality, and thereby to destroy its own

power to collect taxes at all? In other words, what standing has it to denounce an act of the legislature as unconstitutional, by the operation of which it has never been hurt, and never can be? The rule is well settled that a litigant may not attack a statute as unconstitutional unless he can show that its enforcement would be an infringement upon his rights. The constitutionality of a statute cannot be questioned by one who is not prejudiced by its enforcement. *Brown v. Smart*, 145 U. S. 454; *Walsh v. Columbus H. V. & A. R. Co.*, 176 U. S. 469. The authorities on this proposition are abundant and uniform. A collation of them may be found in 6 Ruling Case Law, under Sections 87 and 88 (page 90). Based upon these authorities, the text states the rule as follows:

"87. Before a law can be attacked by any person on the ground that it is unconstitutional, he must show that he has an interest in the question, in that the enforcement of the law would be an infringement on his rights. One who is not prejudiced by the enforcement of an act of the legislature cannot question its constitutionality or obtain a decision as to its invalidity on the ground that it impairs the rights of others. It has been said that courts cannot pass on the question of the constitutionality of a statute abstractly, but only as it applies and is sought to be enforced in the government of a particular case before the court; for the power to revoke or repeal a statute is not judicial in its character. * * *

"88. Where the class which includes the party complaining is in no wise prejudiced, the general rule is that it is immaterial whether a law discriminates against other classes, or denies to other persons equal protection of the laws."

The conclusion is unavoidable that the defendant county has no standing to attack the constitutionality of these statutes. We have no occasion, therefore, to consider the question of statutory classification which is presented to us in the briefs. For the reasons stated, the order of the trial court will be— *Affirmed.*

All the justices concur.