W. K. HERRICK, Appellee, v. CHEROKEE COUNTY, Appellant.

**COUNTIES:** Vested Interests—Return of Fees Collected. A county has no such vested interest in fees legally collected by it as will prevent the legislature from enacting a statute for their return to the persons from whom collected.

Headnote 1:  15 C. J. p. 583 (1926 Anno.)

*Appeal from Cherokee District Court.*—C. C. BRADLEY, Judge.

FEBRUARY 17, 1925.

AN action to recover sheriff's collection fee in case of mortgage foreclosure. From an adverse ruling on a demurrer to the petition, defendant appeals.—*Affirmed.*

*Lew McDonald,* for appellant.

*W. K. Herrick,* for appellee.

ALBERT, J.—Section 1, Chapter 49, Acts of the Thirty-seventh General Assembly, provides as follows:

"Each sheriff is entitled to charge and receive the following fees: * * *

"7. For collecting and paying over money, on the first $500 or fraction thereof, 2 per cent; on all in excess of $500 and under $5,000, 1 per cent; on all over $5,000, ½ per cent; * * *"

Chapter 102 of the Acts of the Fortieth General Assembly repeals the above paragraph of the Acts of the Thirty-seventh General Assembly, and further provides:

"Where property has heretofore been sold at sheriff's sale, and the time of redemption has not yet expired, and the debtor, or other lien holder, redeems from the sale, the county shall refund to the debtor, or whoever redeems, the fees collected by the sheriff at the time of sale under the law repealed by Section 1 of this act, or if the property is not redeemed, then the county shall refund said fee to the holder of the certificate of sale at the time the redemption period expires."

This later act went into effect, by reason of publication clause therein, on the 17th day of March, 1923.

Plaintiff's petition contains eight counts, which are identical, except as to amount claimed. He seeks to recover fees paid to the sheriff under the section of the Acts of the Thirty-seventh General Assembly as above set out. He alleges presentation of the claims to the county, demand, and refusal of the

county to pay the same. The total amount involved is $508.09, with interest.

To each count of the petition of the plaintiff, a demurrer was filed, which raises but one question, to wit, the constitutionality of the aforesaid Chapter 102 of the Acts of the Fortieth General Assembly, it being claimed that the money turned over to the county by the sheriff gave to the county vested property rights therein, and hence that the county cannot be deprived of such right by this retroactive legislation.

Counsel, in submission of the case, are agreed that retroactive and retrospective statutes are not unconstitutional, either under the Constitution of the United States or that of the state of Iowa, unless they affect vested property rights. The question then involved is narrowed down to a single proposition of whether, or not the county has a vested property right in those fees so paid in by the sheriff.

Vested rights are defined in 12 Corpus Juris, at page 955, as follows:

"Rights are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. On the other hand, a mere expectancy of future benefit, or a contingent interest in property founded on anticipated continuance of existing laws, does not constitute a vested right. * * * The term 'vested rights' relates to property rights only, and does not apply to personal rights."

These fees collected by the sheriff and turned over to the county go to the credit of the county fund. After they reach this fund, they are usable by the county for any purpose marked out by the statute for the use of county funds. The statutory enactment above referred to amounts, at most, to nothing more than an order to refund this money so collected. In this respect we can see no difference between an order refunding these fees so collected and the usual and ordinary order refunding taxes wrongfully or illegally assessed.

In the case of *Rogers Loc. Mach. Works v. American Emigrant Co.*, 164 U. S. 559 (17 Sup. Ct. Rep. 188), among other things it is said:

"The county of Calhoun is a mere political subdivision of

the state, created for the state's convenience, and to aid in carry-
ing out, within a limited territory, the policy of the state. Its
local government can have no will contrary to the will of the
state, and it is subject to the paramount authority of the state,
in respect as well of its acts as of its property and revenue held
for public purposes. The state made it, and could, in its discre-
tion, unmake it, and administer such property and revenue
through other instrumentalities.''

In *Slutts v. Dana,* 138 Iowa 244, this court said:

" 'A county is a public corporation, which exists only for
public purposes connected with the administration of the state
government, and it and its revenues are alike, where no express
restriction is found to the contrary, subject to legislative con-
trol.' ''

In *City of Clinton v. Cedar Rapids & M. R. R. Co.,* 24 Iowa
455, this court said:

"Municipal corporations owe their origin to, and derive
their powers and rights wholly from, the legislature. It breathes
into them the breath of life, without which they cannot exist.
As it creates, so it may destroy. If it may destroy, it may
abridge and control. Unless there is some constitutional limita-
tion on the right, the legislature might, by a single act, if we
can suppose it capable of so great a folly and so great a wrong,
sweep from existence all of the municipal corporations in the
state, and the *corporation* could not prevent it. We know of no
limitation on this right, so far as the corporations themselves
are concerned. They are, so to phrase it, the mere *tenants at
will* of the legislature.''

This quotation gives the status of municipal corporations
under the laws of Iowa, and under it numerous cases will be
found, distinguishing the rights of said corporation as to its
property and subdividing the same into what is designated as
public property and private property.

It is a well recognized principle of municipal law that a
municipal corporation has a dual capacity. Hence the distinc-
tion between public and private property, as applied to such
municipalities. A county is, in reality, an arm of the state, to
aid in its governmental functions only; and being such, it and
its property are wholly under the control of the legislature.

In the case of *State ex rel. City of Omaha v. Board of County Commissioners*, 109 Neb. 35, at 40 (189 N. W. 639, at 641), it is said:

''It must be remembered that a county does not possess the double governmental and private character that cities do. It is governmental only, and in that capacity acts purely as an agent of the state. The funds raised by taxation in the county are subject to the direction and control of the legislature for public use in that county, and the property of the county, acquired by funds raised through taxation, is property of which the state can direct the management and disposition, so long, at least, as it acts for the benefit of the public in the taxing district.''

Aside from constitutional provisions, specifically directing the disposition of revenues, the legislature has the power to regulate the disposition which shall be made of taxes collected both by the state agencies and by the local authorities. 37 Cyc. 1588. Probably the leading case in the United States on the question of the control by the legislature of the public funds of the county, is the celebrated case of *State, Use of Washington County v. Baltimore & O. R. Co.*, 12 Gill. & J. (Md.) 399 (38 Am. Dec. 317), which case was subsequently affirmed by the Supreme Court of the United States in *State of Maryland v. Baltimore & Ohio R. Co.*, 3 How. (U. S.) 534. This case grew out of a railroad charter which provided that, in case the company failed to locate and build its road through three towns, it forfeited $1,000,000 to the state of Maryland, for the use of Washington County. The company failed to live up to its charter. The legislature repealed the penalty clause of the charter; and, after suit brought thereon, it was held that the county could not recover, the court declaring that the corporation had no vested right in such a fund as this,—that the same was under the sovereign control of the legislature.

While there may be some conflict under the various decisions in the states as to the line of demarcation between the public and quasi private property, as applied to municipal corporations, yet there seems to be little divergence of opinion as applied to counties.

Without pursuing this subject further, we have no hesitancy in concluding that it was within the power of the legis-

lature to enact the statute herein cited. The ruling of the district court, therefore, was right, and is affirmed.—*Affirmed.*

Faville, C. J., and Evans and Arthur, JJ., concur.