J. O. Boyd et al., Appellants, v. R. E. Johnson, Treasurer of State, et al., Appellees.

No. 40757.

September 29, 1931.

J. O. Boyd and Bertha L. Pflug, for appellants.

John Fletcher, Attorney-general, Earl F. Wisdom, Assistant Attorney-general, J. M. C. Hamilton, County Attorney, D. J. McNamara, Deputy County Attorney, and Sawyer & Norman, for R. E. Johnson, Treasurer of the State, and H. A. Skyles, Treasurer of Lee County, appellees.

. Sawyer & Norman, for Keokuk Savings Bank & Trust Company, appellee.

GRIMM, J.—This suit was brought on November 21, 1925. The State Treasurer, R. E. Johnson, the County Treasurer of Lee County, and the school depository, the Keokuk Savings Bank and Trust Company, were named defendants.

On August 1, 1925, the State Treasurer made a call for a diversion of interest under the challenged act. This was followed by an order by the county treasurer, on August 25, 1925. On September 3, 1925, the plaintiff school district served a written demand upon its depository that any payments which should be made must be made under protest. The depository bank made payments under protest due in September, October and November. The depository bank filed its answer on November 27, 1925. On November 30, 1925, the other defendants filed a resistance and motion to dismiss, which was overruled. On December 4, 1925, the court granted a temporary injunction. On December 10, 1925, the plaintiffs made application for an extension of the temporary injunction until final hearing.

The defendants, the treasurers, refiled a motion to dismiss. On December 24, 1925, the court directed the depository bank to withhold the interest arising from the deposit of school money until said cause should have been determined on final hearing.

On January 21, 1926, the defendants, the treasurers, filed a motion to dissolve the temporary restraining order and to dismiss plaintiff's petition. On January 21, 1928, the defendants, treasurers, filed an answer. On December 14, 1928, this court filed its decision in the case of Scott County v. Johnson, 209 Iowa 213. On June 23, 1930, the defendants, the treasurers, filed an application to withdraw their answer and renewed their motion to dissolve and dismiss. To this a resistance was filed. On July 24, 1930, the trial court sustained the defendants' motion to dismiss and the plaintiffs appeal.

. The plaintiffs' petition and amendment cover more than forty pages of abstract. The most that we can do, within reasonable space, is to attempt to refer to most of the material claims therein made.

The plaintiff Boyd appears as a resident, freeholder and taxpayer of the Independent School District involved and brings

the action on his own behalf and on behalf of all others similarly situated. It is claimed that the School District has for years operated on the "budget" plan, which has taken into account the interest on deposits, the said interest being considered as a part of the income of the school district; that by reason of said interest, the levies for school purposes are smaller than they otherwise would be: and it is alleged that if the interest on these deposits is to be taken under the provisions of the challenged act, more taxes must be levied and the plaintiff Boyd will be required to pay a greater sum as taxes, as will the other taxpayers in the School District.

It is claimed that the challenged act is an indirect method of imposing a tax upon the plaintiff taxpayer and other taxpayers, without distinctly stating the nature of the tax.

It is alleged that the law is not of equal and uniform operation upon all of the people paying taxes in Iowa. It is also claimed that the challenged act indirectly takes the property of the plaintiff taxpayers and other taxpayers without due process of law.

It is alleged that the school district had accumulated property specially dedicated for the use of the taxpayers and residents of the school district; that from time to time some of this property was sold, some of it was rented, and by various means an income was derived therefrom; that a substantial income arose from tuition from pupils residing outside the school district and in other states; that it received substantial sums in the way of federal aid; that it also received a substantial income from tuitions to a night school and from admissions for extra-curricular activities, from borrowed money in anticipation of taxes, from the issuance of obligations of the school district: and the plaintiffs claim that all money so derived was held by said school district in its proprietary capacity.

It is claimed that the interest arising from said proprietary funds belonged to the district in such a way as that it could not be lawfully diverted under the provisions of the challenged act. It is also claimed that the school board held in trust a fund known as the Kilbourne Prize Fund. The school district had received this money under the terms of a will. A certain portion of the interest of the fund was to be given in prizes to students in the school district under provisions specified in the

will and the balance of the interest was to be added to the original fund.

It is alleged that the challenged act was in violation of several provisions of the Constitution of the State of Iowa.

Six errors are relied upon for reversal. We shall not find it necessary to deal with all of them. The first error relied upon for reversal raises the question whether either plaintiff had sufficient interest in the controversy to entitle him to challenge the constitutionality of the act.

It will be recalled that the plaintiff Boyd as a freeholder claims if the act operates as to the funds of the school district, it will necessitate the payment of more taxes by Boyd. The school district alleges it has a proprietary right in the funds and in the interest accruing thereon and also that the district holds certain specially dedicated property in trust.

I. Before and at the time of the enactment of said Chapter 173 of the Acts of the Forty-first General Assembly, the following sections of the statute were in force as existing law: Sections 7404, 5651, 5548 and 4319, of the Code of 1924. We set them forth herein:

"7404. *Deposits by County Treasurer.* The county treasurer shall, with the approval of the board of supervisors as to place of deposit, by resolution entered of record, deposit state, county, or other funds in any bank or banks in the state to an amount fixed by such resolution at interest at the rate of at least two and one-half per cent per annum on ninety per cent of the daily balances payable at the end of each month, all of which shall accrue to the benefit of the general county fund."

"5651. *Deposit of funds.* Treasurers of cities and towns shall, with the approval of the council as to place and amount of deposit, by resolution entered of record, deposit city and town funds in any bank or banks in the city or town to which the funds belong, at interest at the rate of not less than two and one-half per cent per annum on ninety per cent of the daily balances, payable at the end of each month. Interest shall accrue to the benefit of the general fund."

"5548. *Deposit of funds.* He shall deposit all funds coming into his hands by virtue of his office, in a bank conveniently located, each deposit to be in the name of his township and at a

rate of interest not less than two and one-half per cent per annum on ninety per cent of the daily balances, payable at the end of each month, which interest shall accrue to the benefit of the township road fund.''

"4319. *Deposit of funds.* It is hereby made the duty of the treasurer of each school corporation to deposit all funds in his hands as such treasurer in some bank or banks in the state at interest at the rate of at least two per cent per annum on ninety per cent of the daily balances payable at the end of each month, all of which shall accrue to the benefit of the general fund of such school corporation; but before such deposit is made, such bank shall file a bond with sureties to be approved by the treasurer and the board of directors of such corporation in double the amount deposited, conditioned to hold the school corporation harmless from all loss by reason of such deposit or deposits; provided that in cases where an approved surety company's bond is furnished, said bond may be accepted in an amount equal to ten per cent more than the amount deposited. Said bond shall be filed with the president of the school board and action may be brought thereon either by the treasurer or the school corporation as the board may elect.''

Chapter 173 of the Acts of the Forty-first General Assembly is in part as follows:

"An act to create a state sinking fund for public deposits and to provide a method for the payment of public funds deposited as provided by law, in banks which have since become insolvent; to provide a manner of collecting the sinking fund and of making disbursements therefrom; to provide for the subrogation of the treasurer of state to the rights of the holders of deposits of public funds in the hands of receivers; to increase the powers of the executive council, town and city councils, boards of school directors and of township trustees, relating to deposits of public funds; to relieve public officers from liability on account of the loss of public funds deposited in legal depositories; to amend, revise, and codify sections one hundred thirty-nine (139), forty-three hundred nineteen (4319) and fifty-five hundred forty-seven (5547) of the Code, 1924, relating to depository bonds, and to repeal sections seventy-four hundred five

(7405), fifty-six hundred fifty-two (5652) and fifty-five hundred fifty (5550) of the Code, 1924, relating to depository bonds.

"Be it enacted by the General Assembly of the State of Iowa:

"Section 1. * * * There is hereby created in the office of the treasurer of state a separate fund to be known as the state sinking fund for public deposits and the purpose of said fund shall be to secure the payment of their deposits to state, county, township, municipal, and school corporations having public funds deposited in any bank in this state, when such deposits have been made by authority of and in conformity with the direction of the local governing council or board which is by law charged with the duty of selecting depository banks for said funds. Said funds shall be collected by the treasurer of state as needed and shall be held by him and deposited as other public funds, and at no time shall any call be sent out for the collection of such funds or diversion of interest be commenced when there is a balance on hand in such fund of more than five hundred thousand dollars ($500,000.00). All above a necessary working balance shall be kept invested in United States government bonds under the direction of the executive council."

"Section 2. * * * All interest hereafter collected by the state of Iowa from depositories of state funds as provided in section one hundred forty (140) of the Code, 1924, all interest hereafter collected from depositories of the county funds by county treasurers as provided in section seventy-four hundred four (7404) of the Code, 1924, all interest hereafter collected by city treasurers as provided in section fifty-six hundred fifty-one (5651) of the Code, 1924, all interest hereafter collected by school treasurers as provided in section forty-three hundred nineteen (4319) of the Code, 1924, all interest collected by township clerks under section fifty-five hundred forty-eight (5548) of the Code, 1924, and any other interest hereafter collected from depositories of public funds, as provided by statute, is hereby diverted from the general fund or township road fund, as the case may be, and shall be paid into the state treasury and kept in the fund created by this act, or so much thereof as shall be ordered so paid by the treasurer of state. No part of said interest above two and one-half per cent (2½%) per annum shall be so diverted or collected for said sinking fund."

"Section 9. * * * No treasurer shall be liable for loss of public funds by reason of insolvency of the depository bank, when deposited hereafter as provided by law."

Chapter 174 of the Acts of the Forty-first General Assembly has no special bearing on the controversy involved in this case. Chapter 92 of the Acts of the Forty-second General Assembly provides in a general way, by amendments to Sections 4319 and 7404 of the Code and Chapter 173 of the Acts of the Forty-first General Assembly and Chapter 174 of the Acts of the Forty-first General Assembly, for the issuance of anticipatory warrants in advance of said sinking fund. The provisions therein contained have no special bearing on the controversy involved in this case.

At the very threshold of this case lies the question whether either of the plaintiffs at bar has such an interest in the controversy in suit as to entitle either of them to challenge the constitutionality of the law under consideration. This court, in Iowa Life Insurance Company v. Board of Supervisors, 190 Iowa 777, said:

"The rule is well settled that a litigant may not attack a statute as unconstitutional unless he can show that its enforcement would be an infringement *upon his rights.* The constitutionality of a statute cannot be questioned by one who is not prejudiced by its enforcement. Brown v. Smart, 145 U. S. 454; Walsh v. Columbus H. V. & A. R. Co., 176 U. S. 469. The authorities on this proposition are abundant and uniform. A collation of them may be found in 6 Ruling Case Law, under Sections 87 and 88 (page 90). Based upon these authorities, the text states the rule as follows: '* * * Before a law can be attacked by any person on the ground that it is unconstitutional, he must show that he has an interest in the question, in that the enforcement of the law would be an infringement on his rights. * * * It has been said that courts cannot pass on the question of the constitutionality of a statute abstractly, but only as it applies and is sought to be enforced in the government of a particular case before the court; for the power to revoke or repeal a statute is not judicial in its character.' " (Writer's italics.)

In Herrick v. Cherokee County, 199 Iowa, 510, this court said:

"Rights are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a *present interest*. On the other hand, a mere expectancy of future benefit, or a contingent interest in property founded on anticipated continuance of existing laws, does not constitute a vested right. * * * The term 'vested rights' relates to property rights only, and does not apply to personal rights." (Writer's italics.)

In Scott County v. Johnson, 209 Iowa 213, this court had before it the constitutionality of this same statute upon a case, however, brought by a county instead of a school district. In that case, this court held that the county has no such right in the interest on its funds as would enable it to attack the constitutionality of the act. Much, if not all, of the reasoning contained in the said Scott County case is applicable here. The Scott County case was decided December 14, 1928, and we deem it unnecessary to reiterate here much of the reasoning it contains. We quote the following therefrom:

"Prior to the year 1909, there was no statutory provision requiring the payment of interest by depositories of public funds. The sections of the statute quoted above (7404, 5651, 5548 and 4319, quoted herein also) were enacted at different times on and after the year 1909. * * * By such enactments the legislature created a source of revenue which was nonexistent before. By such statutes no effort was made to allot to particular funds the interest accruing on the respective deposits of such funds. All interest collected on county deposits was allotted to the 'general fund' of the county. All interest collected on city deposits was allotted to the 'general fund' of the city. All interest collected on deposits of school corporations was allotted to the 'general fund' of such corporation. All interest collected on township deposits was allotted to the 'road fund' of the township. Under the act complained of (Chapter 173 of the Acts of the Forty-first General Assembly), all such allotments were diverted into the state sinking fund. The plain-

tiff challenges the power of the legislature to divert *its* allotments from its 'general fund' into the state sinking fund.''

Further, in testing the question of the county to challenge the act, the court says:

''It may be conceded, only for the purpose of the argument, that, prior and up to the enactment of the act in question, all interest collected on county deposits became the property of the plaintiff, because such was the effect of the statutory allotment to its 'general fund.' Section 7404. But such ownership rested upon the legislative will. It became the owner of such property only because the legislature so enacted. Such enactment was necessarily subject to change by future enactments. Unless, therefore, the plaintiff can establish its ownership of the property on grounds other than legislative enactment, it is in no position to challenge the power of the legislature to change such enactment. * * * The legislature having opened up this new source of revenue, the state necessarily has the incidental power to receive its fruit in such manner as the legislature shall provide. * * * We hold, therefore, that plaintiff's alleged ownership of the 'interest' is such only as is conferred upon it by legislation, and that, as to future benefits, it is necessarily subject to later legislation.''

The foregoing quotation from Scott County v. Johnson, 209 Iowa 213, illustrates the line of reasoning by which this court held a county not in a position to challenge the constitutionality of the act under consideration here. Upon the same line of reasoning, it follows that the school district (plaintiff in this case) is not in a position to challenge the constitutionality of the act. It must be borne in mind that this legislation does not attempt to take from the plaintiff school district any of its original funds, regardless of the source from which the district may have procured them. Moreover, the act does not attempt to take from the district any interest which may have been received by the school district upon any of its funds prior to the time the act became effective. The legislation under consideration only applies to interest accruing, after the act becomes effective, upon funds deposited as by law provided.

The appellant argues at great length that its funds are

proprietary in character and therefore beyond legislative control. It is alleged that part of its funds is made up of tuition moneys, fines, forfeitures and other accruals of this character. It is also alleged that a portion of its funds comprises what is known as the Kilbourne Prize Fund. We will deal with this later. As previously stated, the act in controversy does not take from the plaintiff school district any part of the principal of any of these funds. It only deals with the interest on said funds.

It is claimed by the plaintiff that some of its funds, exclusive of the Kilbourne Fund, belonged to it under constitutional provisions and consequently they are beyond legislative control. Here, again, it must be°recalled the act under consideration does not affect the original fund, but only the interest thereon.

Turning again to the Scott County case, which is the most recent expression of this court on the subject, we find the following quotation from Waddell v. Board of Directors, 190 Iowa 400:

"The defendant is a school corporation. It is a legislative creation. It is not organized for profit. It is an arm of the state, a part of its political organization. It is not a 'person,' within the meaning of any bill of rights or constitutional limitation. It has no rights, no functions, no capacity, except such as are conferred upon it by the legislature. The legislative power is plenary. It may prescribe its form of organization and its functions today, and it may change them tomorrow. It may confer or withhold power to take title to real estate. Conferring such power, it may qualify it, both as to the title and tenure of the real estate. It may dissolve the corporation at any time, and may direct the disposition of its property."

Again, we find in the Scott County case a quotation from McSurely v. McGrew, 140 Iowa 163, the following:

" 'If nothing but private rights were involved, it is manifest that the act could not be sustained. But the matters involved here are public, and the county of Van Buren is the real party in interest. A county, while a body corporate under our law, is a subdivision of the state, created for administrative and other public purposes, owes its creation to the state, and is subject at all times to legislative control and change. No citizen

has any vested right in or to its revenues. These may be changed, diverted to other uses, or taken away, and no one may complain on the theory that his interests have been affected or any contract rights destroyed. The legislature might have permitted the deposit of county funds in banks and absolved the county officers from any liability on account of such deposits. Neither the county nor any of the inhabitants thereof had any vested interest in the funds coming into the county treasurer's hands.' ''

Upon the reasoning of the Scott County case (and the citations therein contained) and upon its authority, we hold that neither of the plaintiffs herein is in a position to question the constitutionality of the act under consideration. The interest on deposits of the school district constituted a fund created by the Legislature and entirely within its power. The alleged rights of the individual plaintiff come squarely within the definition of this court in Herrick v. Cherokee County, 199 Iowa 510, hereinbefore quoted. His interest is a mere ''expectancy of future benefit, or a contingent interest in property founded on anticipated continuance of existing laws.'' Such interest does not constitute a vested right. It was such interest as the Legislature, under the circumstances in this case, could properly take away.

In Scott County v. Johnson, 209 Iowa 213, this court said:

''If Section 7404 should be deemed to create in the plaintiff a vested right, entitling it to the protection of the constitutional inhibition, then, for the same reason, Section 4319 should be deemed to create a like vested right in a school corporation. We have held definitely that a school corporation cannot challenge the constitutionality of a legislative act. Waddell v. Board of Directors, 190 Iowa 400. We have held also indirectly that a county is under the same disability. McSurely v. McGrew, 140 Iowa 163. And later, we have held directly to such effect. Iowa Life Ins. Co. v. Board of Supervisors, 190 Iowa 777. These authorities are quite conclusive against the plaintiff's capacity to challenge this legislation.''

The appellant relies mainly on the following cases: Snyder v. Foster, 77 Iowa 638. In that case, the Board of Supervisors of a county proceeded to let a contract to build a bridge over a

navigable lake. The court found that the statutes conferred no such power upon the Board of Supervisors and that a taxpayer of a county had an interest such as permitted him to test the question.

Munn v. Supervisors, 161 Iowa 26, deals with an appeal from an order of the Board of Supervisors establishing a drainage district.

Huston v. City of Des Moines, 176 Iowa 455, is a case testing the validity of a statute and an ordinance licensing and regulating what are known as "jitneys."

In Cummins v. City of St. Louis, 2 S. W. (Mo.) 130, a taxpayer sought to enjoin an act of the city with reference to property owned by him.

Iowa Life Insurance Company v. Board of Supervisors, 190 Iowa 777, has already been considered.

The cases cited by appellant are not in point. From what has already been said by this court upon the subject, it necessarily follows that neither of the plaintiffs herein have such an interest in the sinking fund under consideration as authorizes them to challenge the constitutionality of the act in question.

All of the reasoning employed by this court in reaching its conclusions in the case of Scott County v. Johnson, 209 Iowa 213, is equally applicable here and that case is controlling. It becomes unnecessary to consider any of the other questions presented except the one pertaining to the Kilbourne Prize Fund.

II. The plaintiff's petition contains the following:

"Plaintiffs furthermore state that Harriet R. Kilbourne, by will probated February 23, 1887, at Keokuk, Iowa, devised and bequeathed to the Board of Directors of the Independent School District of the City of Keokuk certain property which she directed that said Board of Directors should keep invested and reinvested and directed 'the said Board of Education to apply and pay as follows annually:

" 'First, one-half of all of said interest to be paid to the scholar who shall pass the best average examination in the graduating class each year in the High School at Keokuk;

" 'Second, one quarter of all of said interest shall be paid to the scholar who shall pass the second best average examination in the graduating class each year in the High School of Keokuk;

and I direct that the remaining one-quarter of all the interest shall be added annually to the principal sum, the interest of which shall be divided equally between the first and second best scholars as stated above.' "

Manifestly, the Kilbourne money constitutes a trust fund in the possession of the Board of Directors of the Independent School District of the City of Keokuk. Said school district does not own the fund. It does not own the interest on the fund. It merely accepted a trust and it is undertaking to administer it. The Legislature has no power to take control of the interest accruing on this fund and it follows that the statute under consideration does not apply to the interest derived from said fund. So far as this interest is concerned, it is not a question of the constitutionality of the Act, but merely that the Act does not apply to the interest on the said Kilbourne trust fund.

Apparently, the trial court, by its judgment and decree, held the provisions of the challenged act applicable to the interest on the Kilbourne fund and to that extent, and that only, the action of the lower court is modified.

It follows that the cause must be, and is, modified and affirmed.

All justices concur.