EXIRA COMMUNITY SCHOOL DISTRICT, Aaron Petersen, A Minor Child, by Curtis Petersen, His Father and Next Friend, and Curtis Petersen, Matthew Rasmussen, Toni Rasmussen, Joseph Rasmussen, Trisha Rasmussen, Minors by Mike Rasmussen, Their Father and Next Friend, and Mike Rasmussen, Appellants,

v.

STATE of Iowa, Iowa Department of Education, Audubon Community School District, Atlantic Community School District, Kenneth Slothouber, Auditor of Audubon County, and Peggy Smalley, Treasurer of Audubon County, Appellees.

No. 93–194.

Supreme Court of Iowa.

Feb. 23, 1994.

Thomas R. Eller of Eller, Brink & Sextro, Denison, for appellants.

Bonnie J. Campbell, Atty. Gen. and Christie J. Scase, Asst. Atty. Gen., for appellees State of Iowa and Iowa Dept. of Educ.

Thomas W. Foley of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, Des Moines, for appellee Audubon Community School Dist.

Kenneth J. Fossen, Atlantic, for appellee Atlantic Community School Dist.

Brian P. Anderson, Asst. County Atty., for appellees Kenneth Slothouber and Peggy Smalley.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

LAVORATO, Justice.

This case pits a small school district against two larger school districts in a David and Goliath battle over the constitutionality of the financing provision in our state's open enrollment statute. *See* Iowa Code § 282.-18(8) (1991). Exira Community School District (Exira), along with two taxpayers who live in the district and their children who attend school there, appeal. Unless the context dictates otherwise, for the balance of this opinion, we refer to Exira, the two taxpayers, and their children collectively as appellants. The appellants challenge a district court order (1) denying Exira standing, and (2) upholding the constitutionality of the financing provision in section 282.18(8) against due process and equal protection challenges. Because we conclude Exira has no standing and the financing provision is constitutional, we affirm.

## I. *Background Facts.*

Iowa's open enrollment law allows taxpayers who live in one school district to enroll their children in school districts outside the district in which they live. As a practical matter, the 1990–91 school year was the first time Iowa parents could take advantage of the open enrollment law. During that school year, forty students living in Exira open enrolled to either the Audubon Community School District (Audubon) or the Atlantic Community School District (Atlantic). Thirty-six of the forty students chose Audubon; the rest chose Atlantic. Most of these students gave "better curriculum" as their reason for the change. During this same school year, five students open enrolled to Exira from other districts.

Exira has about 350 to 400 students. Audubon has about 900 students, while Atlantic has in excess of 1500.

Under the financing scheme of the open enrollment statute, the receiving school district sends a quarterly statement to the sending school district. The statement requests tuition payments for those students of the sending district who are attending school in the receiving district. Audubon billed Exira. After some foot dragging, Exira paid most of the open enrollment tuition owed Audubon for the first three quarters of the 1990–91 school year. But Exira withheld the balance despite Audubon's repeated demands for payment.

Records for the 1991–92 school year show that seven students open enrolled into Exira and forty-seven students open enrolled out of Exira to other school districts. Since it last paid Audubon for the three quarters of the 1990–91 school year, Exira has refused to pay any further open enrollment tuition either to Audubon or to Atlantic.

## II. *Background Proceedings.*

The appellants filed a petition for declaratory judgment and injunctive relief against the State, the Iowa Department of Education, Audubon and Atlantic school districts, the auditor of Audubon County, and the treasurer of Audubon County. The petition sought an injunction to prohibit the transfer of Exira property tax revenues to Audubon

and Atlantic to pay charges for students who had transferred under the open enrollment statute. The main relief sought was a declaratory ruling that section 282.18(8) was unconstitutional as applied to the appellants. This constitutional challenge was limited to that part of section 282.18(8) that required transfer of these property tax revenues. The following day, the district court issued the requested injunction *ex parte.*

Later the State moved to dismiss, contending that Exira lacked standing. Atlantic joined in this motion. Audubon also counterclaimed for the open enrollment tuition payments that Exira owed it for the 1990–91 and 1991–92 school years.

By agreement the appellants' request for temporary injunction and the motions to dismiss were joined with the trial on the merits. The parties also agreed to continue trial on the counterclaim until after the district court resolved the appellants' claims.

Following trial the district court upheld the constitutionality of section 282.18(8) and dissolved the temporary injunction. Later the temporary injunction was reinstated until resolution of Audubon's counterclaim. The district court ultimately entered judgment against Exira in favor of Audubon for the open enrollment tuition payments. This appeal followed.

III. *Standing.*

 The well-settled rule in Iowa is that school districts, as political subdivisions of the state, lack standing to mount a constitutional attack against a state statute. *See Southeast Warren Community Sch. Dist. v. Iowa Dep't of Pub. Instruction,* 285 N.W.2d 173, 176 (Iowa 1979). This is so because

> [a school district] is a legislative creation.... It is not a "person," within the meaning of any bill of rights or constitutional limitation. It has no rights, no functions, no capacity, except such as are conferred upon it by the legislature.

*Boyd v. Johnson,* 212 Iowa 1201, 1210, 238 N.W. 61, 65 (1931). Exira concedes this point, but insists that this court has recognized an exception to the general rule for cases of "great public importance." Exira

thinks the disbursement of school funds is just such a case. In support Exira cites *Board of Supervisors v. Iowa Dep't of Revenue,* 263 N.W.2d 227 (Iowa 1978).

In *Board of Supervisors v. Iowa Department of Revenue,* this court did say that "public importance" was recognized by some courts as an exception to the general rule of no standing. *Id.* at 232–34. But the court also expressly held that it was unnecessary to decide whether it should adopt such an exception. *Id.* at 234. This was so because there were parties to the suit who could satisfy the traditional test of constitutional standing: the alleged constitutional defect must affect the party. *Id. See State v. Gates,* 306 N.W.2d 720, 723 (Iowa 1981) (litigant not personally affected by alleged constitutional defect lacks standing to assert allegation on behalf of others in hypothetical situations). Those parties were taxpayers and property owners whose interests were allegedly infringed by the challenged legislation. *Board of Supervisors,* 263 N.W.2d at 234. Because those parties were in a position to raise the constitutional challenges themselves, the "public importance exception" to the general no standing rule was not even considered. *Id.*

Here the district court correctly likened the individual appellants to the taxpayers and property owner-plaintiffs in *Board of Supervisors v. Iowa Department of Revenue:* the individual appellants here—like the taxpayers and property owners in that case—are alleging interests that are adversely affected by the challenged provision. These appellants are the real parties in interest and are fully capable of raising the due process and equal protection challenges asserted.

We conclude that the general rule controls here, leaving Exira without standing to contest the constitutionality of the financing provision in section 282.18(8). The district court correctly dismissed Exira as a party to the suit.

IV. *The Constitutional Claims: Substantive Due Process and Equal Protection.*

We reach the merits of the constitutional claims because the remaining appellants— the taxpayers who live within the Exira school district and their children who attend

school there—do have standing to challenge the constitutionality of section 282.18(8).

■ Because constitutional claims are alleged, our review is de novo in light of the totality of the circumstances. *State v. Taft*, 506 N.W.2d 757, 762 (Iowa 1993).

A. *Iowa's school financing scheme.* To understand better the appellants' constitutional claims, we need to explore somewhat the structure of Iowa's school financing scheme.

Local property taxes and state foundation aid are the two primary sources of financing available to local Iowa school districts. What the state contributes is not static but depends upon the amount of funds generated through local taxation and the number of students living in each school district.

■ As the district court found, Iowa's school finance formula is pupil-driven. That becomes apparent when one studies the formula for funding that portion of a school district's budget allotted to educating all students living in the district.

Before describing the specifics of the formula, we need to explain some terms. Because of the complexity of school financing in Iowa and the number of variables involved, our explanation will be general and limited to financing of regular education programs.

The district cost per pupil is the total cost of educating all students in a district divided by the number of students in the district. The amount changes each year, but under current law it cannot exceed 110% of the state cost per pupil.

The state cost per pupil is similarly calculated. The state determines what it will cost to educate all the children in the state in a given year. This figure is the sum of the budgets for all school districts. The total sum is divided by the total school enrollment in the state. The resulting figure is the state cost per pupil.

■ The formula for determining how a district generates money to fund that portion of its budget allocated to educating all students in the district follows three steps:

First, each year a school must levy and collect a foundation property tax of $5.40 per $1000 of assessed valuation on all taxable property in the district. *See* Iowa Code § 257.3(1).

Second, in addition to this property tax, each district receives state foundation aid "in an amount per pupil equal to the difference between the amount per pupil of foundation property tax in the district, and the combined foundation base per pupil or the combined district cost per pupil, whichever is less." Iowa Code § 257.1(2).

Last, a school district must impose an additional tax levy sufficient to fund the combined district cost for the budget year. *See* Iowa Code § 257.4(1).

The first step generates from a uniform tax levy a part of the budget for educating students in a particular district. That figure varies from district to district because the assessed valuation of the taxable property is different from district to district.

In the second step, the State guarantees through state aid that every student's education will be funded up to a level that is roughly 83% of the state cost per pupil. This part of the formula attempts to equalize the amount of funds each district has available to finance the education of students living in the district. For example, districts with a high property tax base receive less state foundation aid because these districts generate more local property taxes per pupil. In contrast, districts with a low property tax base receive more state foundation aid because these districts generate less local property taxes per pupil.

In the last step, the district must levy local taxes to fund the difference between the 83% state foundation aid level and the state's cost per pupil. If the district cost per pupil is higher than the state's cost per pupil, the district has the option to levy taxes to fund this entire difference, a part of it, or none of it.

Whereas the first step in the formula remains constant, the last two steps are calculated on a per pupil basis. That is why the formula is described as pupil-driven.

The formula is designed to equalize the amount of funds available to finance the education of every child in the state regardless of where the child lives. The amount will not be exactly equal because each district has the option under the third step of the formula to levy taxes to bring the district cost per pupil to a level that is 110% of the state cost per pupil. The state cost per pupil is the amount necessary to provide a regular education for students, that is, what the state considers to be an adequate education.

The first and third steps in the formula are consistent with the historical notion that a local school district should have control over how children in its district are educated. In addition, the third step gives the district leeway to say, within limits, it is going to go beyond what the state considers to be an adequate education.

The district cost per pupil for the 1990–91 school year for each of the three districts involved demonstrates how close the equalization is. For that school year, Exira's district cost per pupil was $3044, Audubon's was $3017, and Atlantic's was $2978.

B. *The merits.* That brings us to the constitutional questions we must answer in this case. That portion of the financing scheme for open enrollment under attack is found in the following italicized language of Iowa Code section 282.18(8):

A pupil participating in open enrollment shall be counted, for state school foundation aid purposes, in the pupil's district of residence. A pupil's residence, for purposes of this section means a residence under section 282.1. *The board of directors of the district of residence shall pay to the receiving district the lower district cost per pupil of the two districts,* plus any moneys received for the pupil as a result of non-English speaking weighting under section 442.4, subsection 6, for each school year. The district of residence shall also transmit the phase III moneys allocated to the district for the full-time equivalent attendance of the pupil, who is the subject of the request, to the receiving

district specified in the request for transfer.

(Emphasis added.)

The appellants make no challenge to the constitutionality of the open enrollment law per se. They concede that open enrollment has a proper and valid legislative purpose. They also do not challenge that part of section 282.18(8) which requires transfer to the receiving district of that portion of the "district cost per pupil" represented by state foundation aid.

What the appellants do challenge is that part of section 282.18(8) which requires transfer to the receiving district of that portion of the "district cost per pupil" represented by the local real estate tax revenues— steps one and three of the formula. Simply put, the appellants think it is unconstitutional to require local real estate tax revenues for open enrollment students to follow those students to the receiving districts.

As they did in the district court, the appellants raise substantive due process and equal protection challenges to section 282.18(8) under the federal and Iowa Constitutions. The appellants believe that section 282.18(8) is not facially invalid but invalid only as applied to them.

The federal Due Process Clause prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Iowa Due Process Clause mandates that "no person shall be deprived of life, liberty, or property, without due process of law." Iowa Const. art. I, § 9.

The Equal Protection Clause of the Fourteenth Amendment to the federal Constitution prohibits states from "deny[ing] ... any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The comparable provision in the Iowa Constitution prohibits laws that "grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens." Iowa Const. art. I, § 6.

■ We usually deem the federal and state due process and equal protection clauses to be identical in scope, import, and pur-

pose. *Bruns v. State,* 503 N.W.2d 607, 609–11 (Iowa 1993). We do so here.

■ The appellants do not allege that section 282.18(8) infringes upon a fundamental right or creates a suspect class, either of which would trigger a strict scrutiny, non-deferential, analysis. *City of Maquoketa v. Russell,* 484 N.W.2d 179, 184 (Iowa 1992) (allegation of fundamental right infringement triggers strict scrutiny analysis); *Hearst Corp. v. Iowa Dep't of Revenue & Fin.,* 461 N.W.2d 295, 305 (Iowa 1990) (strict scrutiny analysis triggered by allegation of inherently suspect class). Our standard for review then is the rational basis test for both the substantive due process and equal protection challenges. *Kent v. Polk County Bd. of Supervisors,* 391 N.W.2d 220, 224–25 (Iowa 1986).

We have explained the rational basis test under a substantive due process challenge this way:

> There is no dispute about the rule that, to be constitutional, [a statute] must have a definite, rational relationship to a legitimate purpose....
>
> A party who challenges [a statute] has the burden of proving it unconstitutional, and must negate every reasonable basis upon which the ordinance may be sustained. This means that the challenger has the burden of producing the evidence, and persuading the court, of the [statute's] lack of rational nexus with its supposed purpose.
>
> ....
>
> ... If reasonableness of the [statute's] nexus to its purported end is fairly debatable, it must be allowed to stand.

*Id.* at 225 (citation omitted).

In the same case—*Kent*—we explained the rational basis test for equal protection challenges:

> [The challenged classification must be sustained] unless the challenging party can demonstrate that it is patently arbitrary and bears no rational relationship to a legitimate governmental interest. Under the rational basis test, a legislative classifi-

cation is upheld if any conceivable state of facts reasonably justify it.

*Id.* (citation omitted).

■ A finding that section 282.18(8) has a rational basis for substantive due process purposes also defeats the appellants' equal protection challenge. *See Scott v. City of Sioux City,* 736 F.2d 1207, 1216 (8th Cir. 1984).

The purpose of our open enrollment statute is stated in Iowa Code section 282.18(1):

> It is the goal of the general assembly to permit a wide range of educational choices for children enrolled in schools in this state and to maximize ability to use those choices. It is therefore the intent [of the legislature] that this section be construed broadly to maximize parental choice and access to educational opportunities which are not available to children because of where they live.

■ As we noted earlier, the appellants have no quarrel with the open enrollment law per se. They do not challenge its constitutionality. Their substantive due process challenge is to the way the state has chosen to finance open enrollment. On this point their argument is simple. They believe the financing mechanism in section 282.18(8) is unreasonable because it requires a transfer of locally generated tax revenues without a showing of need. What the appellants want is a financing scheme that would require a showing that the receiving district "needs" the tax dollars more than the sending district. Otherwise—the appellants argue—a significant loss of students could ultimately destroy a sending district.

The evidence shows that Exira raised about 50% of its funds from state aid and 50% from local real estate taxation. As a result of open enrollment, Exira transferred about $70,000 from local property tax revenues to the receiving districts for the 1991–92 school year. This represented a $70,000 shortfall in available spending for students remaining in the Exira school district.

Exira introduced evidence through its superintendent to show how this reduction translated into financial trouble for the district. For example, the district could not

hire a full-time librarian. In the future elementary teachers will be required to take on more duties because funds will not be available to pay teachers' aides. The district will not be able to hire a curriculum coordinator for computers and other modern learning devices. This jeopardizes the district's ability to offer current technological training to students. The district has been unable to hire a nurse on a full-time basis. Finally, the district has reduced its professional staff. According to the superintendent, the effect of section 282.18(8) could jeopardize the district's very existence.

Exira thinks this harm might be constitutionally permissible if the funds were needed at the receiving schools. Exira notes, however, that the evidence is clear there is no such need.

The appellees, on the other hand, say the record does not support the appellants' claim that Exira needs the funds to survive. They point out that Exira follows sound fiscal management principles and operates with significant unspent balances. The record does reflect that Exira's unspent balances have actually increased since open enrollment went into effect. Exira's unspent balance for the school year 1987–88 was $158,537; for the school year 1988–89 it was $191,156; for the school year 1989–90 it was $237,916, and for the school year 1990–91 it was $252,422.

Appellants' complaint boils down to this. Before open enrollment, the state had achieved through the financing formula educational equality for every student in Iowa. During the first year of open enrollment, Exira experienced a $70,000 loss in tax revenues necessary to educate the students remaining in the Exira school district. This resulted in a substantial disparity in funds available for education between Exira and Audubon. This disparity has disturbed the educational equality previously existing.

The complaint assumes that a school financing system must achieve such equality before a court can say the system has a rational basis. The United States Supreme Court has rejected such a notion in the context of an equal protection challenge to a state school financing scheme. *See San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

In *Rodriguez,* the Supreme Court upheld Texas' system of financing its public schools against an equal protection challenge. Funds for the public schools came from two sources: state and local taxation. State aid accounted for about half of the financing and the balance came from local property taxes. The state aid was aimed at guaranteeing a certain level of minimum education for all children in the state. However, any equality that might be achieved stopped with state aid because of the substantial disparity in the value of assessable property between local school districts. As a result, substantial interdistrict disparities in school expenditures existed throughout the state. For example, in a typical school year, one district had total revenues of $594 per pupil while a less affluent district had only $356 per pupil.

The *Rodriguez* Court came to the following conclusions that have significant ramifications for school financing in this country because, at the time, most of the other state school financing schemes were like Texas'. There was no showing—as alleged—that Texas' financing system disadvantaged a suspect class by discriminating on the basis of wealth. *Rodriguez,* 411 U.S. at 18–28, 93 S.Ct. at 1288–94, 36 L.Ed.2d at 34–40. Although important, education is not a fundamental right. *Id.* at 35, 93 S.Ct. at 1297, 36 L.Ed.2d at 44. Under a rational basis analysis, Texas' system of financing bore a rational relationship to a legitimate state interest in two ways. First, the system assured a basic education for every child in the state. Second, the system permitted and encouraged a large measure of local participation in, and control of, each district's schools. *Id.* at 49, 93 S.Ct. at 1305, 36 L.Ed.2d at 52.

After finding this rational basis, the *Rodriguez* Court came to two other conclusions. First, any inequality in expenditures between districts resulting from varying property values within the districts did not render the system "so irrational as to be invidiously discriminatory." *Id.* at 55, 93 S.Ct. at 1308, 36 L.Ed.2d at 55. And, second, "any scheme of local taxation—indeed the very existence of identifiable local governmental units—re-

quires the establishment of jurisdictional boundaries that are inevitably arbitrary." *Id.* at 53–54, 93 S.Ct. at 1307, 36 L.Ed.2d at 55.

Here the legislature has expressly stated its purpose in enacting open enrollment legislation—to give children access to educational opportunities not available to them because of where they live. The appellants virtually concede that access to educational opportunities through open enrollment is a legitimate state purpose, and we hold that it is. Section 282.18(8) serves this purpose by providing a financing mechanism for educating students who open enroll out of their districts.

In addition, section 282.18(8) rationally fosters this purpose by supplying a financing mechanism that maintains per pupil equity in the amount of funds available to educate all students in this state. In short, each student has roughly the same amount of money for his or her education wherever that student is educated. We are convinced that Iowa's financing mechanism does a far better job of maintaining per pupil equity than the one under attack in *Rodriguez.* That being the case, one can readily see that Iowa's financing mechanism in section 282.18(8) easily passes constitutional muster.

The appellants do not even pretend to argue that the financing mechanism—even with the $70,000 shortfall to Exira—is preventing Exira from providing an adequate education to the students who remain. Clearly, under this record, it does not.

Up to this point, we have been addressing the appellants' relative need argument which is the lynchpin of their constitutional challenges. Implicit in this argument is that the financing mechanism in section 282.18(8) should ensure the continued existence of a local school district.

In our view that is the wrong focus. In devising a pupil-driven formula, the legislature has made a policy decision. That decision is that every student will have the same amount of funds available for his or her education wherever the student is educated. As the district court wisely noted, not only does the appellants' relative need argument overlook the basis of Iowa's educational finance system, it also

> presumes that local property tax revenues are intended to be used to maintain and support the local school rather than to educate the resident students of the district.... *Local property taxes are not collected for the purpose of supporting a local school, but for the purpose of educating the resident students of a school district.* [Section 282.18(8) ], by requiring a resident school district to pay the lower district cost per pupil to a school which educates its resident pupils under the open enrollment option, merely requires the resident district to fund the education of its resident students and allows the receiving district to continue to devote the funds it generates to the education of its resident students.

(Emphasis added.)

In the final analysis, the appellants' relative need argument is really all about a school district's alleged due process right to exist. It is also about a school district's alleged equal protection right to be treated the same as a district fortunate enough to survive in today's competitive environment surrounding public education.

The short answer to this is that the appellants incorrectly assume that school districts have constitutional rights. School districts, as such, are not people and for that reason have no constitutional rights.

■■■ If it chooses to do so, the legislature can—without constitutional impediment—terminate a school district's existence. And when the legislature enacted open enrollment legislation, it knew full well that its ultimate effect might mean the demise of some smäller schools. Despite this knowledge, the legislature made a policy decision—right or wrong—to go with open enrollment. It is not for us to judge the wisdom of such a policy. That was a legislative call.

■■■ In yielding the call to the legislative branch of government, we are not insensitive to the feelings and strongly-held views of patrons of smaller schools, such as the Exira school. We recognize that individuals and families sense a way of life is in the balance

and vehemently challenge any assumption that centralization of schools improves the quality of education. The proper forum for this debate is however not in the courts, but in the other branches of state government. Our clear duty is to interpret and apply the law given to us, and not to develop or choose among schemes for public education.

The appellants might argue that our response does not answer the Exira students' constitutional challenges. For substantive due process purposes, the argument is that any funding mechanism that deprives students remaining in Exira the "right" to be educated there deprives them of property without due process. For equal protection purposes, the argument is that such a deprivation treats Exira students differently from those who desire to open enroll elsewhere.

We know of no authority that says a student's desire to be educated in a certain school district rises to the level of a right protected by due process. Rather, a student has a due process right to an adequate education. That right—as we have demonstrated—is furthered, not diminished, by the funding mechanism in section 282.18(8).

Nor do we think such students are treated differently for equal protection purposes. We say this because section 282.18(8) assures every student roughly the same amount of funds for his or her education wherever that student is educated.

V. *Disposition.*

We conclude section 282.18(8) does indeed have a rational basis. This disposes of the appellants' substantive due process challenge; it likewise disposes of the appellants' equal protection challenge.

**AFFIRMED.**