A. D. PUGH, Appellant, v. POLK COUNTY et al., Appellees.

No. 42964.

NOVEMBER 12, 1935.

A. D. Pugh, for appellant.

Carl A. Burkman, County Attorney, and Howard M. Hall, Assistant County Attorney, for defendants, except defendant banks.

Clark, Byers, Hutchinson & Garber and C. B. Hextell, for defendants Valley National Bank of Des Moines, Iowa, and Valley Savings Bank of Des Moines, Iowa.

HAMILTON, J.—There is little dispute about the facts. The defendant Valley National Bank was duly organized under the laws of the United States and the Valley Savings Bank was duly organized under the laws of the state of Iowa—separate institutions occupying the same banking building in the city of Des Moines, Iowa, and having practically the same officers

and stockholders. For convenience, we will refer to said banks as the National Bank and the Savings Bank.

In loyal obedience to executive proclamation, both of the state and nation, under date of March 4, 1933, these banks, with all other banks, closed their doors and suspended business. The National Bank remained closed. The Savings Bank reopened under Senate File No. 111 (Acts 45th Gen. Assem., ch. 156, 9283-e1 et seq., C., '35) on March 13, 1933, and continued to operate under the supervision of the state banking department until October 2, 1933, when it had completed its reorganization and was released from Senate File No. 111. On the 11th day of March, 1933, two days before the Savings Bank went under Senate File No. 111, the National Bank entered into a contract with its codefendant, the Savings Bank, whereby all of the assets of the National Bank were transferred to said Savings Bank in consideration of the Savings Bank assuming and agreeing to pay all of the liabilities of the National Bank to its depositors and also all bills payable by said defendant bank, and, in addition thereto, the National Bank executed and delivered to the Savings Bank its note for $500,000 to protect and secure to the Savings Bank and the creditors of the National Bank, and to make enforceable as against the stockholders of the defendant bank, the statutory liability on the stock held by them, in the event it became necessary to resort to the statutory stock liability. The capital stock of the defendant National Bank, issued and outstanding, was $500,000. That of the Savings Bank was $150,000. It is undisputed that this transaction was authorized and approved by the boards of directors and stockholders of both banks and was approved by the chief examiner of national banks in Chicago, under whose supervision the contract was prepared, and was acquiesced in, but not formally approved, by the comptroller of the United States.

Each of said banks had been legally designated by the board of supervisors of Polk county as a depository for county funds. It is alleged by plaintiff that at the close of business on March 3, 1933, there were $70,000 in general deposits and $75,000 of motor license fee deposits, or a total of $145,000 of county public funds on deposit in the National Bank, and on deposit in the Savings Bank, county public funds of $75,000. That the county was a depositor is not in dispute, but the exact

amounts are not clearly shown by the evidence. The amount, however, is not material.

About the 12th day of May, 1933, the Savings Bank for itself and as assignee of the deposit accounts and assets of the National Bank, sent out to the depositors of both banks a depositor's agreement which is headed:

"DEPOSITOR'S AGREEMENT.

"With the Valley Savings Bank of Des Moines, Iowa, for Itself and as Assignee of the Deposit Accounts and Assets of the Valley National Bank of Des Moines, Iowa.

"Des Moines, Iowa,
"May 12th, 1933."

by the terms of which 10 per cent of the deposit was to be paid in cash within sixty days after the opening of the Savings Bank, or after the same was released from Senate File No. 111 by the banking superintendent, and 45 per cent was deferred or waived for a period of three years; the remaining 45 per cent was assigned and set over to trustees under a form of agreement approved by the superintendent of banking, substantially in the form used throughout the state, which is familiar to the legal profession.

Pending negotiations with the county board, with reference to obtaining their signatures to this agreement, the plaintiff on or about June 29, 1933, commenced this action in his dual capacity as an alleged depositor of the National Bank and as a resident citizen taxpayer of Polk county, to have said transfer of assets and assumption of liabilities agreement and the depositor's agreement declared ultra vires, illegal, fraudulent, and void and canceled and set aside, alleging that the Acts of the 45th General Assembly and of the Extra Session of the 45th General Assembly and amendments thereto, relating to the reorganization of banks, are unconstitutional, asking that judgment be entered in favor of Polk county and against the National Bank for $145,000 public deposits and established as a lien on the assets of said bank in the hands of the Savings Bank and for the foreclosure of said lien and for judgment in favor of all other depositors of the National Bank in a sum representing the balance due each of said depositors, and further asking that said assets of said National Bank be sold to satisfy said judgments, and that judgment be rendered against

the Savings Bank for any deficiency resulting from such sale, that judgment be rendered in favor of Polk county and against the Savings Bank for $75,000 public funds deposited by the county in said bank, with interest and costs, and for an accounting for a specific performance of the assumption agreement as alternative relief, and for general equitable relief, etc.

There are many amendments and amendments to amendments, and reiterations and additions to the prayer. The pleadings cover in all 84 pages of the abstract, and any attempt to incorporate the allegations of the petition and the various amendments and reiterations would unduly extend this opinion and serve no useful purpose.

It appears from the evidence that for many years plaintiff had been a depositor in the National Bank, but at the time the bank closed, his account was overdrawn in the sum of $45.25. However, on April 19, 1933, as payment on a bill for legal services, one Herman Marchand, guardian, assigned to plaintiff a $50 interest in a $281.74 deposit in his favor as guardian in the National Bank. It further appears that on October 2, 1933. after its reorganization, the Savings Bank, in accordance with the terms of the waiver agreements, paid to plaintiff, along with other depositors, a 10 per cent dividend in cash, or $5 on this $50 deposit held by him as assignee. This he accepted without protest, objection, or complaint.

**▮▮▮** The first legal combat took place when the county and members of the board of supervisors filed a motion to dismiss plaintiff's cause of action as to the county and members of the board on the ground, among others, that plaintiff as a taxpayer had no such interest in the money on deposit in either of said banks as to entitle him to bring this action, and that there was a misjoinder of actions. This motion was sustained generally on July 28, 1933, and the ruling of the court on, this motion is one of the grounds which plaintiff assigns as error. At the time this motion was ruled upon, plaintiff had amended his petition, withdrawing that portion thereof in which he based his right to maintain his action as a depositor and stood on his rights as a taxpayer alone. It appears from the evidence that plaintiff was not a general taxpayer and paid no property tax of any kind. His interest as a taxpayer is based solely on the fact that he paid an automobile license fee and bought gasoline to run said automobile, and therefore paid a gasoline tax.

By House File No. 541, chapter 157, Acts of the 45th General Assembly, (9283-e7 et seq., C., '35) provision is made for county boards of supervisors to enter into the plan of reorganization of banks. By House File No. 588, chapter 158, Acts of the 45th General Assembly, the provisions of House File No. 541 are extended to include money regularly deposited by the county treasurer in any national bank, or deposit liability which has been assumed by a state bank, savings bank, or trust company or private bank. The matter is left within the discretion of the board of supervisors, the language of the statute being: "The board of supervisors may at its discretion, enter into such depositors' agreements," etc. Chapter 157, section 1. Under the provisions of section 7420-d1 of the 1931 Code of Iowa, it is made the duty of the board of supervisors to designate banks in which the county treasurer shall deposit public funds. That the board of supervisors under the statutes is the financial agent of the county and charged with the general care and management of its public funds, and that to such board is granted the discretionary power to join with other depositors in the rehabilitation or reorganization of banks in which public funds have been deposited by the county treasurer under the express direction and authorization of said board can admit of no doubt. Harrison County v. Ogden, 165 Iowa 325, 340, 145 N. W. 681. And where there has been a substantial compliance with the law in reference to reorganization and rehabilitation of banks by the officers of the bank, under the supervision and approval of the state banking department, in the absence of a showing of fraud or arbitrary abuse of discretion, it does not lie in the power of an individual taxpayer to compel the county to act otherwise and to force it into expensive litigation via receivership.

Furthermore, at the time this motion to dismiss was sustained, the allegations of the petition were not such as to make it an action by a taxpayer in a representative capacity. See, as bearing on this question, McSurely v. McGrew, 140 Iowa 163, 118 N. W. 415, 132 Am. St. Rep. 248; Scott County v. Johnson, 209 Iowa 213, 222 N. W. 378; Boyd v. Johnson, 212 Iowa 1201, 238 N. W. 61.

There was no error in sustaining the motion dismissing the petition as to the county and the board of supervisors.

Thereafter, on the 31st day of January, 1934, the

court on motion of the defendant banks struck from plaintiff's petition all allegations, except those pertaining to his right to maintain said action personally as an individual depositor. The ruling of the court on this motion is likewise assigned as error.

It is manifest from a reading of plaintiff's petition and the many amendments thereto that the plaintiff attempted entirely too much in one action and the proper method of reaching such a pleading is by motion to strike. Under the allegations of his petition, at the time the court ruled on the defendant banks' motion to strike, the plaintiff was attempting in a personal action to obtain relief which had no relation to his personal deposit in said bank, and was asking and seeking relief for the county which was no longer a party and for other depositors who were not parties to the action, and it is obvious the court was right in striking all allegations of the petition except those relating to his own deposit, and there was no error in the court's ruling.

Following the ruling on this motion, the plaintiff on May 19, 1934, amended his petition by claiming interest on his deposit in the amount of $3.25, and in a separate division of the amendment claiming that the bank had wrongfully deducted and withheld from his deposit without his consent service charges on his account in the amount of $6.04, upon which he claims interest of 48 cents, making it a total of $6.52, and praying for judgment in a total of $54.77. Thereafter, on May 23, 1934, he amended his petition again, wherein he set up that the taxpayers of the county have an interest as such in said deposits of the county funds; that they are numerous; that the private depositors are likewise numerous; and that the relief asked in the petition as amended is of common or general interest to taxpayers and depositors, and that the plaintiff, Polk county, and all other depositors in said bank are common beneficiaries of the trust, and that plaintiff in his own behalf as a taxpayer and as assignee of said private depositor, invokes relief for the common benefit of all depositors. To this petition as amended separate answers were filed by the Savings Bank and the National Bank, pleading the fact of the general financial and economic crisis calling for the proclamations of the President and the Governor of the state, closing banks generally, setting up the provisions of Senate File No. 111, the operation of the Savings Bank under Senate File No. 111, the transfer

of assets and assumption of liabilities contract with the National Bank by and with the authority of the directors and stockholders of both banks, alleging that said transfer was made for the express purpose of having all the assets of the National Bank applied in payment of the liabilities as provided by law and for the protection of all its creditors, including its depositors and the depositors of the Valley Savings Bank, in order that the depositors of both banks might be paid in full; said answers further pleading the reorganization of the Savings Bank under the provisions of the Acts of the 45th General Assembly, the fact that since its reorganization it has paid in full all funds that had been waived by waiver agreements, that it is holding all the assets which were segregated, collecting and properly applying the same, and alleging that this suit was not brought by the plaintiff in good faith, but for the purpose of harassing defendant banks. To these separate answers the plaintiff filed his reply. At the conclusion of the testimony, the court dismissed plaintiff's petition on its merits, from which action, together with the rulings on the motions to dismiss and strike, plaintiff has appealed to this court.

We will not attempt to notice all of the multitudinous legal propositions urged by appellant in his briefs and arguments, most of which have no application to the real issue under the facts in this case. Much of what plaintiff has to say is based on the idea that in the reorganization of the Savings Bank was involved an attempt to reorganize the National Bank, and that the state laws, with reference to reorganization of banks, have no application to national banks. There was no attempt to reorganize the National Bank. The Savings Bank had taken over the depository liability and had purchased the assets of the National Bank, and in the waiver and depositors' agreements that were set out there was combined an agreement with the Savings Bank for itself and also as *assignee of the National Bank,* and in so far as the public funds were concerned, and the rights of the county through its board of supervisors to enter into such agreements, special provision for doing this very thing is found in chapter 158 of the Acts of the 45th General Assembly heretofore referred to.

In so far as the constitutionality of the Acts of the 45th General Assembly in reference to the reorganization of banks is concerned, there is a strong presumption in favor of their con-

stitutionality. Priest v. Whitney Loan & Trust Co., 219 Iowa 1281, 261 N. W. 374, 383, and cases therein cited. (In the view we take of this case, however, it is not necessary for us to pass upon the question of the constitutionality of these laws.)

To sustain his right to maintain this action in his capacity as a taxpayer, plaintiff must not only show that he is a taxpayer, but that his interest as a taxpayer would be injuriously affected by the thing which he seeks to enjoin or upon which he bases his cause of action. Donovan Const. Co. v. City of Waterloo, 211 Iowa 506, at page 511, 231 N. W. 499.

"Courts of equity lend themselves to prevent injuries which are imminent, not merely possible. The plaintiffs, it is true, aver that there will be a deficit, but we cannot hold that the demurrer admits the truth of this averment, because it is impossible in the nature of things to know that there will be a deficit." Dodge v. City of Council Bluffs, 57 Iowa 560, at page 568, 10 N. W. 886, 889.

"The plaintiff does not show, with any reasonable certainty, that he would sustain any injury by the contemplated action of the council. Without such showing, we do not think that he is entitled to an injunction." Searle v. Abraham, 73 Iowa 507, 35 N. W. 612, 613.

Likewise, in his capacity as a depositor, before he can upset the proceedings between these two banks and the reorganization of the savings bank, he must show some substantial injury.

"Unless the complaining depositor can show that he has been substantially injured in ultimate results, has in fact been actually hurt by the reorganization and the plan thereof, he has no right to complain whether upon constitutional or statutory or administrative grounds." Dunn v. Love, 172 Miss. 342, 155 So. 331, 335, 92 A. L. R. 1323; Priest v. Whitney Loan & Trust Co., supra.

Contracts similar to that alleged to have been entered into between the National Bank and the Savings Bank in this case have been upheld by the Supreme Court of the United States on various occasions. See Wyman v. Wallace, 201 U. S. 230, 26 S. Ct. 495, 50 L. Ed. 738; Hightower v. American National Bank of Macon, 263 U. S. 351, 44 S. Ct. 123, 68 L. Ed. 334.

The exact terms of the contract are not before us, but whatever it terms, the statutes in connection with which contracts of this character must be governed are as follows:

"The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares." Rev. Stat. U. S. section 5151 (12 US CA section 63); Act Cong. Dec. 23, 1913, chap. 6, section 23, 38 Stat. at L. 273 (12 USCA section 64).

"Any [national banking] association may go into liquidation and be closed by the vote of its shareholders owning two-thirds of its stock." Rev. Stat. U. S. section 5220 (12 USCA section 181).

"When any national banking association shall have gone into liquidation under the provisions of section 5220 [section 181 of this title], the individual liability of the shareholders provided for by section 5151 [section 63 of this title] may be enforced by any creditor of such association, by bill in equity, in the nature of a creditor's bill," etc. Act Cong. June 30, 1876, chap. 156, section 2, 19 Stat. at L. 63 (12 USCA section 65).

There appears to be nothing irregular or fraudulent in what was done. The record shows that it had the approval of the boards of directors of both institutions and the stockholders of both institutions and the approval of the chief national bank examiner of Chicago, and, while not formally approved, was acquiesced in by the comptroller at Washington, D. C. Whether it was an absolute sale, coupled with an absolute agreement on the part of the Savings Bank to assume all liabilities of the National Bank, or whether it was in the nature of a loan from the Savings Bank to the National Bank with the assets and the $500,000 note pledged as security, is not material, in so far as the depositors are concerned. As between the depositors and the stockholders of the National Bank, the agreement could not amount to a waiver of the statutory liability. The express purpose in giving the $500,000 note was to preserve this statutory liability in favor of the Savings Bank as a creditor, and if for any reason the Savings Bank under this arrangement should

be held not entitled to the status of a creditor under said $500,-000 note and transfer of assets, that would in no way affect the depositors who were creditors of the National Bank. They could by proper action under the federal statutes enforce the statutory liability against the stockholders. The question might be raised by the stockholders of the National Bank as against the Savings Bank if what was done amounted to an assumption of all liabilities, in toto, of the National Bank, on the theory that this would relieve the stockholders of the National Bank, but such a contention would not be tenable as against the depositors of the National Bank. If this contract were set aside, all that the plaintiff as a depositor of the National Bank in process of liquidation would be entitled to would be to share ratably with other depositors of the same class in the assets of the National Bank and in the statutory liability of the stockholders of the National Bank. This is all he would be entitled to if the National Bank were forced into the hands of a receiver and wound up through that process. He has not shown that he has been deprived of any of these rights or that he would sustain one penny's greater loss under the process now in operation than he would sustain through a receivership process of liquidation. The court cannot indulge in speculation in reference to this matter.

In so far as plaintiff's personal depository account is concerned, he does not dispute the overdraft of $45.25. He has been paid $5 on his $50 claim as assignee, leaving only $45 due him, and at some stage of the proceedings he would certainly be met with an offset of this overdraft, which would consume his depository claim. He attempts to overcome this by a claim for interest and also by his objections to the service charge of the bank. The record shows that along with the first service charge was a letter from the bank explaining the reasons for adopting the policy. The plaintiff continued his deposit without any objections. He cites no authority and we know of none which will bear out his contention, either in reference to the interest charge or his objection to the service charge.

Hence, in the last analysis, whatever the process of liquidation of the National Bank, the plaintiff has failed to show that he has sustained any loss or would sustain any loss or damage or that other depositors or taxpayers whom he assumes to repre-

sent would sustain any loss or damage, and without such showing his action must fail.

Furthermore, from a careful examination of the entire record, we fail to discover any irregularity or illegality in any of the proceedings set forth, in the agreement between these banks or in the reorganization of the Savings Bank. We fail to discover wherein there has been any attempt to act arbitrarily in the exercise of their discretionary power on the part of the officials of the bank or the state banking department. We held in the case of Priest v. Whitney Loan & Trust Co., supra, page 1304 (Div. [16] at page 386 of 261 N. W.), that:

"Until some showing is made to the contrary, the action of the superintendent of banking and other public officials in connection with the reorganization of said bank are presumed to be regular, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."

The statutes covering matters of this kind have been substantially complied with. In so far as the waiver agreements are concerned, the question is now moot. All deferred payments have been made and likewise all preferred creditors' claims, amounting to hundreds of thousands of dollars. The wisdom of our lawmaking body in providing a method for rehabilitation and for deferred payments of deposits of banks has been fully demonstrated by the results achieved.

The repeated charge on the part of appellant of bad faith, fraud, usurpation of power, and the odious comparisons of the bank officials with the most infamous and notorious deceased public enemy No. 1 have no basis or justification in the record and are wholly uncalled for. Causticization or vilification of one's adversary adds nothing to the justice of one's cause, and, if necessary to be indulged in as a safety valve to inward feelings, the same should ultimately be consigned to the waste basket and not incorporated in a legal argument.

The view we have taken of this case renders it unnecessary to pass upon appellee's motion to dismiss the appeal. We find no reversible error, and it necessarily follows that the case must be and it is affirmed.—Affirmed.

KINTZINGER, C. J., and ALBERT, MITCHELL, DONEGAN, ANDERSON, POWERS, RICHARDS, and PARSONS, JJ., concur.