JOHN A. TIMMONS et al., Appellants, v. SECURITY SAVINGS BANK of Marshalltown, Appellee.

No. 42958.

JANUARY 21, 1936.

REHEARING DENIED APRIL 8, 1936.

Boardman & Cartwright, for appellants.

E. N. Farber, for appellee.

Edw. L. O'Connor, Attorney General, and Lehan T. Ryan, Assistant Attorney General, amici curiæ.

MITCHELL, J.—For some years prior to March 3, 1933, there was operated at Marshalltown, under the laws of the state of Iowa, a bank known as the Security Savings Bank. On the 25th day of May, 1932, John A. Timmons and Alice M. Timmons deposited $500 in this bank and received a certificate of deposit for that amount. Pursuant to a proclamation issued by the Honorable N. G. Kraschel, Lieutenant Governor of Iowa, acting in the absence from the state of Governor Clyde L. Herring, a temporary banking holiday for all Iowa banks was ordered. In compliance with this order, the Security Savings Bank of Marshalltown ceased operation at the close of business on March 3, 1933, and the bank was thereafter taken over by the superintendent of banking, for operation under the provisions of Senate File No. 111. It was authorized again to open for business on March 13, 1933, under the provisions and conditions of chapter 156 (Senate File No. 111) of the Laws of the Forty-fifth General Assembly (Code 1935, section 9283-e1 et seq.). In May of 1933 an examiner of the state banking department made an examination of the bank to determine whether or not it could qualify for reorganization under the provisions of chapter 159 of the laws of the Forty-fifth General Assembly (Code 1935, section 9283-e12 et seq.). A plan of reorganization was thereafter worked out, which was approved by the Banking Department, the Executive Council, and the Governor of the State. The plan provided that the bank had to have sufficient acceptable assets to cover 50 per cent of the deposits to be taken into the reorganized bank, and that the rejected assets be set up in a trust fund to take care of the balance of the deposit liability, that a 50 per cent stock assessment be levied against the stockholders, and that the earnings of the reorganized bank be pledged to this trust fund so that the proceeds from the stock assessment and from the earnings would equal 100 per cent of the capital stock of the bank. Thereafter the 50 per cent assessment of stock was collected in cash and acceptable notes of stockholders, and the plan was presented to the depositors. The number of depositors' agreements obtained was more than 50 per cent of the total number of depositors holding direct, unsecured, and unpreferred obligations of the bank and aggregating more than 75 per cent of the

total unsecured and unpreferred obligations of the bank. A reexamination was made, and on September 1, 1933, it was released from operating under Senate File No. 111. When the bank opened on September 1, 1933, the depositors whose accounts were in excess of $10 were credited with 50 per cent of their accounts and 50 per cent was set up against the rejected assets which were placed in trust. Ten per cent of the whole amount was payable at once, forty per cent became an assumed liability of the reorganized bank, payable within three years, and 50 per cent was represented by trust certificate to be paid from the assets placed in trust. The Timmonses did not sign the depositors' agreement, and presented their certificate of deposit for payment some time after September 1, 1933, demanding payment in full, together with interest thereon. This was refused, and shortly thereafter they commenced this action against the bank, praying for judgment in the full amount of their certificate, to wit, $500, plus interest at 3½ per cent from May 25, 1932, and for costs. A jury was waived, and the case was tried to the court. The court, after listening to the evidence, entered judgment dismissing the case and for costs against the plaintiffs, and from said judgment, they have appealed to this court.

■■■ The appellants contend that chapter 159 of the Acts of the Forty-fifth General Assembly is unconstitutional. The case at bar was brought and submitted in the lower court prior to the decision of this court in the case of Priest v. Whitney Loan & Trust Co., 219 Iowa 1281, 261 N. W. 374, in which case the same identical question was raised and this court held that the act was constitutional. Upon this proposition the case at bar is controlled by that opinion. Speaking through Justice Hamilton, this court said, at page 1313: "In a recent case in the Supreme Court of Mississippi, Dunn v. Love [172 Miss. 342] 155 So. 331, 333, 92 A. L. R. 1323, a similar statute was under investigation, and in that case the Supreme Court of Mississippi, by a divided court, held the law valid. In that case, however, the bank was in receivership, and the liquidation proceedings and plan for reorganization was during the time the bank was in receivership. The court uses the following language:

" 'This statute, remedial in its nature and operation, is one among a number of legislative acts devised in the attempt to meet, so far as practicable, the unusual conditions brought about

by the present economic depression, the most serious within the present generation, and in the effort to salvage something in the general wreck of things. In considering legislative and administrative efforts at salvage and rehabilitation, in the distressing situation with which the country has been and is yet confronted, we must not permit ourselves to be maneuvered into positions which would view the federal and state constitutions as sculptured idols, frowning with changeless features upon a changing world; for the true view, as was said by this court in City of Jackson v. Deposit Bank, 160 Miss. 752, 768, 133 So. 195, 198, is that "the interpretation of constitutional principles must not be too literal. We must remember that the machinery of government would not work if it were not allowed a little play in its joints," an expression taken from an opinion of the Supreme Court of the United States in Bain Co. v. Pinson, 282 U. S. 499, 51 S. Ct. 228, 75 L. Ed. 482. When examined in the light of this principle of constitutional interpretation, we can find nothing in the general purpose and scope of the statute which is prohibited either by the state or the federal constitution, in which connection we may observe that similar statutes have been under review in other states, and their supreme courts have upheld them in every case which has been brought to our attention. As typical of these cases, we may cite McConville v. Fort Pierce Bank, 101 Fla. 727, 135 So. 392, and Milner v. Gibson, 249 Ky. 594, 61 S. W. (2d) 273.' "

And at page 1316: "Summarized, it is the holding of this court that the exigencies of the occasion were such as to call forth the reserve power of the state at the time of the enactment of Senate File No. 111 (chapter 156) and Senate File No. 483 (chapter 159); that such legislation was remedial in its nature and pertained to a matter vitally affecting the general public interest; that such legislation is 'addressed to a legitimate end and measures taken were appropriate to that end'; that the plaintiff and all other depositors were chargeable with notice of the existing laws, and likewise with the sovereign power of the state to enact additional remedial measures such as these, and that depositors became subject to the exercise of that power in making their deposits; and that such laws are not in contravention of article I, section 10, of the Constitution of the United States, nor of article I, section 21, of the Constitution of the state of

Iowa, prohibiting the enactment of any law 'impairing the obligation of contracts,' nor in violation of the due process clause of section 1 of the Fourteenth Amendment to the Federal Constitution.''

 But the appellants argue that they are entitled to the sum of $284.62; it being conceded by the appellee that there was that amount on deposit to the credit of appellants' account immediately available, it appearing that part of the trust fund was collected and a dividend declared thereon, payable to the depositors. That the lower court erred in not entering judgment for this amount is the contention of the appellants.

It must be kept in mind that the appellants in this case are seeking to recover upon the original certificate of deposit, praying for judgment in the full amount of $500 plus accrued interest.

The statutes complained of by appellants have been declared constitutional by this court. All depositors having deposits similar to that of appellants were and are bound to take 50 per cent of principal and accrued interest in cash and 50 per cent evidenced by a trust certificate, which will participate only in the assets set aside in the trust fund. On September 1, 1933, and thereafter, the reorganized bank was not liable upon the original certificate of deposit, and any prior contractual right of the appellants under their certificate of deposit ceased to exist. This is the holding of this court, as stated in the Priest case, at page 1297:

''In either event, the majority of the depositors holding 75 per cent in amount of the unsecured and unpreferred deposits above $10 were permitted to come under the provisions of the plan submitted to the superintendent of banking, and approved by him. When the superintendent of banking took charge of the bank and its assets, whether as receiver under a court proceeding, or as statutory receiver or liquidating officer under the statute, either before or after the enactment of Senate File No. 111, or whether, on application of the bank he took charge of said bank under the terms of Senate File No. 111—the result being the same in each case—the contractual rights of the plaintiff under her certificate of deposit ceased to exist, except her rights to share in the event of the final liquidation of the bank in her pro rata share of the assets of the bank, including all depositors

great and small, within the same class or her right to share equally with all other depositors of the same class above $10 under the rehabilitation or reorganization plan adopted by the requisite statutory per cent of the unsecured and unpreferred depositors above $10. Obviously, in either event there was no impairment of her contract within the provisions of either the state or federal constitution (Iowa, art. 1, section 21; U. S. art. 1, section 10). She had no contract to impair. For under the law as it existed at the date of the deposit, when the superintendent of banking took over the insolvent bank, her right to enforce her contract to the extent of withdrawal or demanding payment of her deposit terminated ab initio. Kidder v. Hall, 113 Tex. 49, 251 S. W. 497.''

The bank in the case at bar was reorganized and was released and is now a going concern. Appellants are not entitled to recover upon their certificate of deposit, but they are entitled to recover from the reorganized bank the amount due depositors under the plan of reorganization. They do not seek in this case to recover this amount from the reorganized bank but rather bottom their right to recover upon the old certificate of deposit.

In the case of Pugh v. Polk County, 220 Iowa 794, 263 N. W. 315, 320, this court said at page 804: ''If this contract were set aside, all that the plaintiff as a depositor of the National Bank in process of liquidation would be entitled to would be to share ratably with other depositors of the same class in the assets of the National Bank and in the statutory liability of the stockholders of the National Bank. This is all he would be entitled to if the National Bank were forced into the hands of a receiver and wound up through that process. He has not shown that he has been deprived of any of these rights or that he would sustain one penny's greater loss under the process now in operation than he would sustain through a receivership process of liquidation.''

The plan of reorganization which was accepted by better than 50 per cent of the depositors, who had claims and in excess of 75 per cent of the total amount of unsecured and unpreferred deposits, became binding upon the nonsigners to the same extent that it became binding upon the signers. The appellants did not sign or accept the plan. They cannot recover upon the certificate of deposit on which they are suing in this case, but they are entitled to the benefits of the plan of reorganization in the same

amount as those who agreed to it. And this decision is without prejudice to any rights that the appellants have by virtue of the reorganization. It appeared to the legislature, and it has appeared to this court and most other courts, that it is much better and more equitable for all of the depositors to share and share alike in a plan whereby the assets are conserved, than it is for some of the depositors to get 100 per cent and the others nothing, or that the bank be forced into receivership, where it could never be rehabilitated.

 The appellants claim that the provisions of the reorganization statute were not followed and therefore the reorganization is of no force and effect. The superintendent of banking under the law makes the set-up; determines what percentage the depositors must waive; determines how much and in what manner the stockholders will pay their liability; determines when the bank has fully complied and when the proper amount of depositors have agreed, pursuant to law. Under the law, this is all done with the approval of the Governor and the Executive Council.

In the Priest case, at page 1304, this court said:

"Until some showing is made to the contrary, the actions of the superintendent of banking and other public officials in connection with the reorganization of said bank are presumed to be regular, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties. United States v. Chemical Foundation, 272 U. S. 1, 47 S. Ct. 1, 71 L. Ed. 131, at page 142. Under this presumption, it will be taken that the superintendent acted upon knowledge of all the material facts. Likewise, it will be presumed that the superintendent of banking had knowledge of the material facts, and that he acted in the light of such facts. He represented the bank, the stockholders, and creditors, and is presumed to have acted impartially until it is shown to the contrary. There is no claim by the plaintiff that she was not fully apprised of the proposed and final reorganization of the bank. She was solicited to join with the other depositors."

But, irrespective of this, let us look at the record to see what was done in this case. It is conceded by the appellants in their abstract that they do "not intend to take any exceptions to the court's finding that more than a majority in the number of the

bank's depositors holding direct, unsecured and unpreferred obligations of the bank, in excess of $10 each, and that more than 75% of the depositors holding direct, unsecured and unpreferred obligations of the bank signed waivers or depositors' agreement, and evidence upon that branch of the case is not included in this abstract for that reason."

So we start out with the concession that the number of depositors and the amount of deposits required to sign the agreement subscribed to same.

Appellants have objected to the payment of $10 deposits in full, but this has been fully determined in the Priest case, against the theory of the appellants.

An examination of this record shows that there was a full and substantial compliance with all the requirements of the Acts of the Forty-fifth General Assembly and with the plan and directions prescribed and given by the state banking department to the appellee. An examination of the bank was made as required; the plan of reorganization was submitted to and approved by the Superintendent of Banking, the Executive Council, and the Governor of the state; and depositors' agreements were signed in the required number; stock assessments were collected, as provided. All of this was approved by the Superintendent of Banking, then submitted to the Governor, and approved, before the bank was permitted to reopen. It does appear that, in setting up the liabilities of the bank, the examiner overlooked some charges for rent, stationery, and some other minor bills, the total amount of which was insignificant. If there was any difference in the percentage paid and to be paid to the unsecured depositors by reason of the provision for payment of these items in full, that difference was very slight. The total amount of deposits was approximately $500,000; the total amount of these claims was but a few hundred dollars. After all, what the depositors will ultimately obtain will depend upon what is realized from the assets placed in trust. There is no evidence here, or any claim, that there was any fraud in the payment of these small items in full. It was but an oversight upon the part of the examiner, and one that would not affect the depositors materially. In the reorganization of this bank we find that the provisions of the law were complied with, and the plan approved by the officials designated. It therefore follows that the judgment and decree of the lower court must be, and it is hereby, affirmed.

110

DONEGAN, C. J., and ALBERT, ANDERSON, HAMILTON, and POWERS, JJ., concur.

PARSONS, J., being of Counsel in the lower court, takes no part in this decision.