Associated Bankers Title and Mortgage Guaranty Company of the Oranges (hereinafter designated as Associated) is engaged in the business of selling its guaranteed mortgage bonds. These bonds (now in the hands of numerous investors), represent the primary obligation of the company and are secured by groups of bonds and mortgages deposited by it with Savings Investment and Trust Company of New Jersey (hereinafter designated as Savings).
In 1932 six separate series of mortgage bonds numbered as Series 1 A, 1 B, 2 B, 3 A, 4 A, 5 B and 6 B, were issued. The majority of the bonds so issued are still outstanding, with the exception of Series 2 B, which has been fully paid off.
With respect to each series (except that Series 1 A and 1 B were covered by one indenture) Associated executed trust indentures with Savings under the terms of which Associated agreed to deposit with Savings certain mortgages and accompanying bonds, title policies and insurance policies, and Savings was to act as trustee for the holders of the bonds of the particular series. The various indentures are practically identical, and provide that each of the bonds of the particular series is secured proportionately by a series or number of bonds and mortgages, and provide that Associated should from time to time assign the bonds and the mortgages securing them to Savings, as trustee.
The recent widespread economic depression with consequent depreciation in land values so affected Associated that it could no longer pay the rate of interest provided for by the terms of the indentures and the bonds issued pursuant thereto. On March 21st, 1933, Associated was placed under restrictions by order of the commissioner of banking and insurance, pursuant to the provisions of chapter 71 of the laws of 1933. *Page 98 P.L. 1933 p. 133. In accordance with said statute, Associated submitted to the bondholders of each series a plan for its future operations, which was, as required by the statute, approved by the commissioner of banking and insurance and by more than two-thirds of the outstanding bondholders of each series, and Associated has been operating under this plan since the time of its approval.
The plans for each series differ from the provisions of the trust indentures in a number of instances and Savings, as trustee for the bondholders, being in doubt as to whether it should proceed in accordance with the provisions of the indentures or of the plans brings this bill of complaint praying the advice and instructions of the court with respect thereto.
The trust indentures and the plans are practically identical for all series, and the singular will hereafter be used in connection with the indentures and the plans and is to be understood as referring to the indentures and plans for each series.
Chapter 71, laws of 1933, is a general act, affecting all corporations of the class therein named, and providing a general scheme for the conservation of the assets of any such corporation, and for securing a ratable and equitable application of the capital, surplus and reserves of such corporation among persons entitled to claims against the same as security for or in payment of the obligations of such corporation in respect to mortgage and interest in mortgages.
In its preamble the statute recites that a public emergency exists by reason of the abnormal disruption of economic and financial processes affecting the conduct and business of guaranteed mortgage companies; that it is essential in the public interest that the integrity of mortgage investments be preserved, unnecessary foreclosures avoided, liquidation of mortgage investments conducted in an orderly manner, and opportunity afforded for readjustment of mortgages to meet changed conditions, and that this opportunity be extended beyond the period of disturbed banking and financial conditions, and continue during the operations of normal recuperative economic processes; that it is essential in the public interests that assets securing guaranteed mortgage investments *Page 99 
be held, administered and conserved in the interests of the holders in such manner that such assets be held available for their security ratably and equitably, and that for the effectuation of those ends it is necessary and in the public interest that such holders of guaranteed mortgage investments and such mortgage guaranty companies be empowered under regulation by the commissioner of banking and insurance to make readjustments and take all steps appropriate thereto.
Section 2 of the statute provides that the commissioner of banking and insurance shall have power, whenever he deems it expedient for the purpose of conserving the assets of any such mortgage guaranty company or for the purpose of securing a ratable and equitable application of the capital, surplus and reserves of such company, among persons entitled to claims against the same, as security for or in the payment of the obligations of such company in respect of such mortgages and interest in mortgages, or otherwise in the public interest, after such notice or hearing in any case as he shall deem appropriate by general or special orders or regulations from time to time by him made, promulgated and enforced:
(a) To suspend in whole or in part the payment of interest by any such mortgage guaranty company to the holders of mortgages or interest therein, except such part as shall be or shall have been paid to such company by mortgagors or others from whom such payments are due, and to regulate the amount, time and method of payment or distribution thereof to such holders.
(b) To suspend in whole or in part the payment of principal by any such mortgage guaranty company to the holders of mortgages or interests therein except such part as shall be or shall have been actually paid to such company by mortgagors or others from whom such payments are due and to regulate the amount, time and method of the payment or distribution of such principal to such holders.
(c) To suspend the prosecution or enforcement or payment of any claim by any such holder against any such company upon any guaranty in respect of such mortgages or interests therein and to regulate the time, method, ascertainment *Page 100 
and establishment of the amount of any such claim and its enforcement except with respect to moneys actually paid to such company by mortgagors or others from whom the same may be due and to regulate the amount, time and method of the payment or distribution of assets available for payment to such holders.
(d) To authorize or require the holder of any guaranteed mortgage to elect either to accept an assignment of the mortgage or a deed of the premises, if foreclosed, or the decree, if in process of foreclosure, and to surrender any claim against the company on its guaranty on such terms and conditions as the commissioner shall determine, or to consent to and be bound by all of the provisions of the act and all orders or regulations made under the terms thereof.
(e) With the consent of the holders of not less than two-thirds of the face amount of shares or parts of mortgages or mortgage participation certificates or shares or parts of bonds secured by mortgage or bonds secured by trust mortgage or participation certificates or coupon bonds entitling the holder to a proportionate share in a series or number of mortgages and bonds or obligations secured directly or indirectly by mortgages (hereinafter called "interest in mortgages"), exclusive of such interest in mortgages as are held by the company guaranteeing the same or obligated upon the same, to authorize or require thealteration or amendment or waiver of any of the terms andprovisions of the same or of the mortgage or trust mortgages orindentures securing the same, including the maturity of and therate of interest on the same or provisions relating to defaultsthereunder in which such holders are respectively interested.
 * * * * * * *
(j) For the preservation of the trust and the protection of those interested therein to suspend the enforcement of any ofthe provisions of or remedies provided by or to relax theprovisions of or to authorize or require the departure from theterms or provisions of and vary or modify the operations of theprovisions of any trust mortgage or trust indenture made by any mortgage guaranty company securing bonds or *Page 101 
debentures or shares or parts of bonds or debentures or bonds or debentures or certificates entitling the holder to a proportionate share in a series or number of mortgages or other obligations directly or indirectly secured by mortgages.
 * * * * * * *
Section 5 provides that the orders and regulations made by the commissioner shall be binding upon all persons affected thereby, including trustees, and relieves any such trustees of responsibility for any act or omission in compliance with such orders or regulations.
 * * * * * * *
Section 14 provides that the act shall become inoperative after three years from the date of its approval but all orders or regulations made and all acts and things done under the provisions of this act shall be and remain valid and operative.
 * * * * * * *
Section 17 provides that the act shall be liberally construed for the effectuation of its purposes in all courts, in all places and by all public officers.
If the plans were promulgated and approved in accordance with a constitutional statute, I doubt not that the provisions of the plan prevail over the provisions of the trust indenture in all matters of inconsistency between the two.
Argument against the constitutionality of this statute would seem of necessity to be based upon the following:
1. That it constitutes an impairment of the obligation of contract in violation of article I, section 10 of the United States constitution, and article IV, section 7, paragraph 3 of the New Jersey constitution.
2. That it deprives non-assenting bondholders of their property without due process of law in violation of thefourteenth amendment to the United States constitution, in that non-assenting bondholders would be bound to the provisions of the plan by the action of two-thirds or more of their fellow bondholders and of the commissioner of banking and insurance in approving same.
No court has the power to change the language or the terms of a contract. However, where a contract creates a trust, *Page 102 
this court may, under certain conditions, assume jurisdiction and modify the terms of the instrument creating it. The court of chancery in its capacity as universal trustee, may in cases ofemergency, for the preservation of the trust estate and the protection of the cestuis, authorize and direct the trustee to do acts which under the terms of the trust and under ordinary circumstances it would have no power to do. This power of the court is inherent. New Jersey National Bank and Trust Co. v.Lincoln Mortgage and Title Guaranty Co., 105 N.J. Eq. 557.
It is also so well established in the law that it scarcely requires citation of authority that if the contract right involved is one in which the public is concerned, and there is an existing emergency and danger to the public welfare, and the statute is addressed to a legitimate end, applying measures which are reasonable and appropriate to such end, the constitutional guaranties of the right of property and individual freedom of contract must be deferred to the common good and general welfare.
"Federal and state laws are in favor of the regulation of the business affairs of persons and corporations which affect the public interest, and there are federal and state decisions in almost every state in this country upholding the constitutionality of such laws, provided they are reasonable."O'Gorman Young, Inc., v. Phoenix Assurance Co., Ltd., ofLondon, 105 N.J. Law 642, 644.
That an emergency existed at the time of the passage of the statute is not open to question. The seriousness of the situation to financial institutions at the time was so widespread that the legislatures and courts of practically every state took legislative and judicial notice of its existence and extent. Statutes enacted by the legislature of this state which may be properly referred to as companion legislation to the statute under consideration have in many instances been upheld as constitutional by the courts of our state. Reference to a few such decisions and the cases therein cited will suffice. *Page 103 
In In re North Jersey Title Insurance Co., 120 N.J. Eq. 148,
it was held that mortgage guaranty corporations, banks, building and loan associations and insurance companies, are quasi-public institutions, vested with a public interest and as such are within the control of the legislature, so that an incidental impairment of the obligation of contract is not within the interdiction of the state and federal constitutions. In the cited case, the constitutionality of chapter 3 of the laws of 1934 (P.L. 1934 p. 18), providing for the appointment by the court of chancery of trustees for insolvent mortgage guaranty companies, was questioned by the Hackensack Trust Company, trustees under indentures entered into with the mortgage guaranty company. The trustees applied to the court for an order directing the trust company to deliver to it all property in its control by reason of the trust indentures, which action was permitted by the terms of the statute. The trust company resisted the application on the ground that the statute impaired the obligation of contract created by the trust indentures. In holding the act constitutional, Vice-Chancellor Egan said:
"In enacting chapter 3, laws of 1934, the legislature modified and curtailed the right of a trust company to continue its trust duties under an agreement made with a corporation for which a trustee had been appointed under the Mortgage Guaranty Corporations Rehabilitation act. The contract between the parties was, at the time it was made, subject to this reserved power of the state. That being so, I find it difficult to perceive how there can be an impairment of the obligation of contract, or trust indenture, under the circumstances. In Home Building andLoan Association v. Blaisdell, 290 U.S. 398 (at p. 435), the court said: `While the charters of private corporations constitute contracts, a grant of exclusive privilege is not to be implied as against the state.' Chapter 3, laws of 1934, is a general act, affecting all corporations of the class therein named, and providing a general scheme for the conservation, rehabilitation, reorganization and liquidation of such corporations. An examination of the cases leads to the conclusion that the constitutional prohibitions *Page 104 
against the impairment of obligation, and deprivation of property without due process of law, are not always strictly applied; there is a certain amount of plasticity permitted to fit the circumstances. In Home Building and Loan Association v.Blaisdell, supra, the principle is expressed in the following language (at p. 428): `To ascertain the scope of the constitutional prohibition we examined the course of judicial decisions in its application. These put it beyond question that the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula.'"
The constitutionality of the Municipal Finance Commission act (P.L. 1931 ch. 340 p. 830, as amended by P.L. 1932 ch. 236 p.519), was upheld by the court of errors and appeals inHourigan v. Township of North Bergen, 113 N.J. Law 143. The statute creating the municipal commission (P.L. 1931 p. 830), vested the commission with power to make provision for funding or refunding of notes, bonds or other indebtedness of the municipality, and provided that so long as such finance commission shall function, no action or proceeding of any kind, by way of mandamus, or otherwise, could be brought against the municipality, except a general action for the benefit of all creditors, under an order of the supreme court, or a justice thereof. The court held that while the statute seemed to lessen, in a constitutional sense, the efficacy of the means provided for the enforcement of a contract at the time it was made, the statute was a valid exercise of the police power by the legislature, adopted as an emergency measure. "It is therein declared," said the court, "that it is intended `to meet the public emergency arising from a default in the payment of municipal obligations, and the resulting impairment of public credit, requiring intervention by the state to provide for the payment of existing obligations in such a way as to cause the least embarrassment to property owners as taxpayers;' and that it is `remedial in nature, and that the powers granted shall be liberally construed.' * * * This is, of necessity, a proper legislative function, and the rights of creditors, in such a situation, are secondary. It is a proper exercise of the police power. It is *Page 105 
a well established doctrine that the interdiction of statutes impairing the obligation of contracts does not prevent the state from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts entered into between individuals may thereby be affected. * * * While this power [police power] is subject to limitations in certain cases, there is wide discretion on the part of the legislature in determining what is and what is not necessary — a discretion which courts ordinarily will not interfere with. Manigault v. Springs, 199 U.S. 473;26 Sup. Ct. 127; 50 L.Ed. 274; Union Dry Goods Co. v. Georgia PublicService Corp., 248 U.S. 372."
The statute involved in Hourigan v. North Bergen Township,supra, was more vulnerable than the statute in the case at bar, for the effect of the operation of the statute in that case was to take the property or rights of creditors of municipalities for public purposes without compensation, whereas the statute in the case at bar has no such effect; its only effect being the conservation of the assets of such mortgage guaranty company for the purpose of securing a ratable and equitable application of the capital, surplus and reserves of such company among persons entitled to claims against the same, as security for or in payment of the obligations of such company in respect of such mortgages and interests in mortgages, and among other things, for the preservation of the trust and the protection of those interested therein, to relax the provisions of, or require the departure from the terms or provisions of, and vary or modify the operation of the provisions of any trust mortgage or trust indenture, but in a manner designed only to promote the interest of those affected as well as the interest of the public. Neither the public nor any interests involved in the insolvent institution are given any property belonging to others.
Later, in State Board of Milk Control v. Newark Milk Co.,118 N.J. Eq. 504, the court of errors and appeals in upholding the constitutionality of a statute regulating the price of milk said: *Page 106 
"We have lately affirmed the doctrine that these constitutional guaranties of the right of property and individual freedom of contract must yield to the common good and general welfare. The police power extends to all the great public needs; all personal as well as property rights are held subject to this reserve element of sovereignty. Changing conditions necessarily impose a greater demand upon this reserve power for such reasonable supervision and regulation as may be essential for the common good and welfare. The economic interests of the state may justify its exercise, notwithstanding that the expedient resorted to invades the domain of property rights or of contract; generally, it may be exerted whenever necessary for the preservation of the public health, morals, comfort, order and safety. * * * Circumstances may so change in time or so differ in space as to clothe with a public interest what at other times or in other places would be a matter of purely private concern."
In In re Mechanics Trust Co., 119 N.J. Eq. 141, involved a situation similar to the one here present. In that case, a plan of reorganization was submitted by the Mechanics Trust Company, in accordance with P.L. 1933 ch. 116, and the acts amendatory thereof. The plan had been approved by more than two-thirds of the depositors, creditors and mortgage participation certificate holders, and was presented to the court for approval. The plan was attacked upon the grounds that the statute was unconstitutional in that it impaired the obligation of contract and deprived dissenters from the plan of their property without due process of law. It was there held that the banking business is charged with the public interest, and therefore subject to regulation under the police power of the state, and that the statute was a valid exercise of the police power.
The supreme court of the United States in Doty v. Love,295 U.S. 64; 79 L.Ed. 1303, held that a Mississippi statute providing for the reorganization of banks under plans which altered the contract rights of the parties, was within the power of the legislature. It is true that that statute required that, before a plan of reorganization became effective, it should *Page 107 
be submitted to a judicial tribunal for approval. But the supreme court in Timmons v. Security Savings Bank of Marshalltown,299 U.S. 503; 57 S.Ct. 15; 81 L.Ed. Advance Opinions No. 1, 60, in dismissing an appeal from the Iowa supreme court, the opinion of which is reported in 221 Iowa 102; 264 N.W. Rep. 708, upon the ground that no substantial federal question was presented, indicated that a statute to be within the constitutional power of the legislature, need not provide for court approval of a plan, for the Iowa statute did not so provide. In connection with theTimmons Case, Priest v. Whitney Loan and Trust Co., 219 Iowa 1281; 261 N.W. Rep. 374, should be read. See, also, Gibbes v.Zimmerman, 290 U.S. 326; 78 L.Ed. 342. These cases had reference to banking statutes, but the fact upon which the legislative control was rested was that the business of banking was charged with a public interest. Whether a business is charged with a public interest depends upon the nature of the business and the existent conditions. For the purposes of the legislation now under review I am of the opinion that the business in which the Associated was engaged was one charged with a public interest and prior opinions of this court and of the court of errors and appeals which I have heretofore mentioned, would seem so to indicate. The reason underlying the decisions of the courts with reference to the banking business applies here to the extent at least necessary to support the challenged statute.
Other matters upon which the complainant seeks the instruction of the court are:
(a) Under the provisions of some of the trust indentures, Savings was authorized to institute in its name, as trustee, foreclosure proceedings upon the mortgages held by it as trustee, and to bring such other proceedings as may be necessary to protect the interests of the bondholders. Under the terms of the various plans it is provided that Associated shall foreclose mortgages pledged as collateral security for the payment of bonds if in its discretion it shall be necessary or proper. Having arrived at the conclusion that the statute in question is constitutional the provisions of the plan are *Page 108 
effective and Associated should be permitted to foreclose mortgages.
(b) The trust indenture provides that Associated shall assign to Savings bonds and mortgages, insurance policies, title guaranties, c., as collateral security for the payment of the bonds, which provision has been carried out by Associated. The question arises whether Savings should reassign the bonds and mortgages and other documents to Associated so that Associated may foreclose in accordance with the plan. Savings is instructed to reassign the bonds and mortgages, insurance policies and title guaranties to Associated.
(c) The trust indenture provides that in the event of default by mortgagors Savings is to foreclose. Under the plan the right to institute foreclosure proceedings on mortgages pledged as collateral security for the payment of the bonds is in Associated, if in its discretion it deems such action necessary or proper, and if it obtains title to the premises described in the mortgage as the result of foreclosure to substitute the real estate as collateral instead of the bond and mortgage, the title to the real estate so acquired to be held in the name of the company or its nominee, and the company is given the right to sell any of said property so acquired under foreclosure, at such price and upon such terms as in its discretion shall deem proper, the proceeds to be invested in the same manner as provided in the sixth paragraph of the plan for the investment of money received, as payment on account of or in full for the principal of mortgages and deposited as security for the bond issue. In view of the conflict between the indenture and plan in this respect the question is presented as to how title to foreclosed property shall be taken. As to this Savings is instructed that Associated may foreclose the mortgages but since the plan contemplates that title may be taken in the name of Associated or its nominee, Associated is further instructed that title to foreclosed property should be taken in its name as trustee so as to preserve the collateral under the trust indenture. Property so acquired may be sold by Associated as provided for by the plan, namely, at such price and upon such terms as in its *Page 109 
discretion as trustee it deems proper and the proceeds invested as provided in paragraph 6 of the plan.
(d) The plan contains a provision that Associated shall have the right to accept payments on account of the principal of bonds and mortgages pledged as collateral security and when such payments accumulate to an amount sufficient to do so, to reinvest same in government securities or in loans on bonds secured by first mortgages upon improved real estate in Essex county, which mortgages shall not exceed sixty per cent. of the appraised value of the property and no one of which shall be in excess of five per cent. of the capital and surplus of the company and payment thereof shall not be fixed for a time later than the due date of the bonds. The indenture is silent upon this point. As to this Associated is advised to invest any such payments in the manner provided by the plan.
Further instruction by the court to the trustee, although prayed for in the bill of complaint, becomes unnecessary in view of the foregoing conclusions.
Decree will be advised in accordance herewith.