The petitioner, New Jersey Realty Company, is the "New Mortgage Company" referred to in the decree or order of *Page 349 
June 22d 1937, approving Plan of Reorganization or Rehabilitation of Fidelity Union Title and Mortgage Guaranty Company. The petition is filed under jurisdiction retained by the court in the sixteenth paragraph of that decree. The petitioner, under the Plan of Rehabilitation of the Fidelity Union Title and Mortgage Guaranty Company, acquired the remaining assets of that company, its subsidiaries and the trustees thereof appointed in that cause, and proceeded to issue, pursuant to the plan approved by the court June 22d 1937, and as directed in said decree, Class A bonds and Class B bonds to the holders of guaranteed mortgages and mortgage participation certificates issued by the Fidelity Union Title and Mortgage Guaranty Company and not withdrawn from the control of said trustees. Class A bonds were payable as to principal on June 1st, 1947, and bore interest of 2 1/2%, payable semi-annually April 1st and October 1st, plus additional interest up to 1 1/2% per annum if the net earnings were sufficient. The Class B bonds were payable as to principal on June 1st, 1952, and provided for contingent interest thereon up to 4% payable out of net earnings, determined as above stated, remaining after the payment of interest at 4% on Class A bonds. The bonds were registered as to principal and interest on the books of the petitioner and the trustee under the indenture. To secure payment of both classes of bonds, pursuant to the plan, the petitioner delivered to J. Ashley Brown, as trustee, an Indenture or Trust Mortgage, dated June 1st, 1937 (hereinafter referred to as the "Original Indenture"). Under the Indenture the petitioner assigned and conveyed to the trustee all mortgages and properties not withdrawn securing the guaranteed mortgage investments issued by the Fidelity Union Title and Mortgage Guaranty Company.
The principal amounts of the Class A and Class B bonds issued were $5,885,163.81 and $2,651,277.60, respectively, of which Class A bonds of $698,027.61 and Class B bonds of $232,494.02 were issued to the company. There were other liabilities: a note payable to Fidelity Union Trust Company of $1,475,210.73 and real estate taxes of $622,683.89. The capital stock consisted of 420,000 shares of $1 par value issued *Page 350 
to former stockholders of the Fidelity Union Title and Mortgage Guaranty Company.
In accordance with the Plan of Rehabilitation a new company known as the New Jersey Realty Title Insurance Company, hereinafter referred to as "Title Company," was organized. It commenced business with a capital stock of $250,000, paid-in surplus of $250,000, and a cash reserve of $100,000, which was deposited with the Commissioner of Banking and Insurance. The petitioner herein paid in to the title company the mentioned cash reserve of $100,000 and $290,000 in subscription for 145,000 shares of its capital stock, amounting to 58% of the authorized and issued 250,000 shares of capital stock. The balance of capital stock and surplus amounting to $210,000 was paid by the subscription of over 1,000 former stockholders of Fidelity Union Title and Mortgage Guaranty Company. The title company has engaged exclusively in the business of providing real estate title service throughout New Jersey, and as of December 31st, 1946, possessed total assets of $1,162,607.12 with earned surplus of $185,071.17 in addition to loss reserves totaling $169,043.80. Other details relating to commissions paid to the petitioner,c., are set forth in the evidence. Suffice it to say that during the nine and one-half years of its inception the petitioner has made great progress toward its initial objectives of its Plan of Rehabilitation, namely, discharging its outstanding obligations and the building up of a going business for the benefit of its bondholders and stockholders. Mortgages, real estate and other assets have been liquidated to the extent that such assets were pledged as collateral for the note of Fidelity Union Trust Company or under the original Indenture as security for Class A and Class B bonds, the proceeds having been applied to the reduction of the note and the purchase and cancellation of outstanding Class A bonds, so that as of December 31st, 1946, the principal indebtedness of the note had been reduced to $260,947.87, and as a result of eight successive annual tenders by bondholders and purchases by the trustee out of funds deposited in the Purchase and Sinking Fund, redemption of Class A bonds in the amount of $2,665,730.66, or 45.3% of the original amount issued, has been effected. *Page 351 
For the year 1946 the gross income of the company from all sources amounted to $1,394,349.81. Deducting operating expenses, including interest on the Class A bonds, and providing for depreciation on buildings of $179,538.01, the net income for the year amounted to $246,680.89.
At the date of filing petition outstanding Class A bonds amounted to $3,225,679.88, of which $2,970,263.60 were held by bondholders and $255,416.28 were owned by the petitioner; while Class B bonds amounting to $2,651,277.60, of which $2,169,567.71 were held by bondholders and $481,709.89 were owned by the petitioner.
On January 27th, 1947, the petitioner submitted to its bondholders and stockholders, a "Plan for the Extension and Payment of Class A Bonds and the Extension of Class B Bonds," which will now be referred to as the "Plan." The Plan is substantially as follows:
(a) The holders of Class A bonds shall have the option of receiving, on and after April 1st, 1947, in cash the whole or any fractional part of the principal amount of their bonds with accrued interest thereon to the date of payment but not after June 1st, 1947, or of exchanging their present bonds for new Class A bonds to mature on April 1st, 1955, bearing fixed interest at the rate of 4% per annum from April 1st, 1947.
(b) The holders of Class B bonds are to exchange their present bonds for new Class B bonds which will mature on April 1st, 1960. Interest on the new Class B bonds from April 1st, 1947, to April 1st, 1952, will be paid at the rate of 2% per annum, plus additional interest up to 2%, or a total of 4% per annum, to the extent warranted by the net earnings of the company (as determined in accordance with the provisions of the Original Indenture), and from April 1st, 1952, to April 1st, 1960, at the fixed rate of 4% per annum.
The petitioner proposes to pay the principal amount of such Class A bonds as may be offered to it for purchase between April 1st, 1947, and June 1st, 1947, out of assets not subject to the Original Indenture. Such Class A bonds as may be presented to the trustee for payment on and after *Page 352 
June 1st, 1947, will be paid by the trustee out of the proceeds of sale and collection of the properties and mortgages pledged under said indenture. The bonds so purchased by the company will be exchanged for new Class A bonds, which will be held as general assets of the company. The bonds presented to the trustee at or after maturity and paid by him will be canceled. Based upon its experience and a careful estimate of future earnings, the petitioner has determined that it can pay the increased fixed interest on the new Class A and Class B bonds.
To secure the new Class A and Class B bonds to be issued as aforesaid, the petitioner proposes to execute and deliver to J. Ashley Brown, as trustee, a Supplemental Indenture or Trust Mortgage, dated as of June 1st, 1947, hereinafter referred to as the "Supplemental Indenture." In addition to amending and supplementing the Original Indenture to provide for the extension of the present Class A and Class B bonds and the increased interest payable thereon, the Supplemental Indenture incorporates the mandatory provisions of the Trust Indenture Act of 1939 (Act of August 3d 1939, Public No. 253, 76th Congress, First Session;15 U.S.C.A., §§ 77aaa et seq.) to the extent that such provisions have been made applicable to the petitioner and the trustee by the Securities and Exchange Commission. Such required provisions generally confer additional powers to the trustee and impose additional duties upon both the petitioner and the trustee for the benefit and protection of the bondholders. In accordance with the Trust Indenture Act of 1939, the petitioner filed applications with the Securities and Exchange Commission for qualification of the Supplemental Indenture and for exemption from certain provisions of such act relating to the requirement of a corporate trustee, the requirement of a separate indenture represented by a separate trustee for each class of bonds, and the required percentage of bondholders which can initiate or direct action by the trustee or upon which the trustee may rely for his protection. By its orders entered on January 24th, 1947, the Securities and Exchange Commission granted the above mentioned exemptions and declared the Supplemental Indenture to be qualified, effective *Page 353 
as of that date. Except as amended and supplemented in the foregoing respects, the Original Indenture remains unchanged by the Supplemental Indenture and the holders of the new Class A and Class B bonds will continue to have the benefit of the Purchase and Sinking Fund and of the redemption provisions of the Original Indenture.
Petitioner submitted the Plan to bondholders and stockholders requesting proxies authorizing their vote for the approval and ratification of the Plan at its annual meeting of stockholders and bondholders on February 18th, 1947. At that meeting votes in person or by proxy in favor of the Plan by stockholders representing 71.4% of the outstanding capital stock and by the holders of 67.7% of the outstanding Class A and Class B bonds, exclusive of bonds owned by the petitioner were recorded. The petitioner also requested bondholders to return a form of notice or consent indicating thereon their desire with respect to the payment or extension of Class A bonds and the extension of Class B bonds. Of the notices returned the holders of Class A bonds in the principal amount of $833,142.90 or 43.5% indicated their desire to receive payment in accordance with the Plan, and the holders of $1,056,710.26 in principal amount, or 55.2% signified their desire and intent to exchange their present Class A bonds for the new Class A bonds, while the holders of Class B bonds in the principal amount of $1,194,128.39 or 92.5% signified their desire and intent to accept the new Class B bonds in exchange for their present bonds. Only 3.7% returned their notices expressing their unwillingness to accept new Class B bonds. At the hearing on the order to show cause entered upon the petition, proof was adduced showing that the holders of more than two-thirds in amount of all Class B bonds (exclusive of bonds owned by the company), the extension of which is provided by the Plan, had assented thereto.
In the sixteenth paragraph of the decree or order of June 22d 1937, the court retained jurisdiction over the Plan of Rehabilitation and reserved to itself the right to make "such orders as it may deem proper with respect to the construction, effect, operation and enforcement of the terms of this decree, * * * and any and all controversies and questions as to the *Page 354 
character, * * * or the sufficiency of any act or thing done in the execution of the `Plan' and with respect to any matter involving the administration of the trust and the rights and interests of any of the parties, the rights and interests of any party under the Trust Indenture and any controversy between any parties to the Trust Indenture including the `New Mortgage Company,' the trustee under said Indenture and the bondholders; jurisdiction is expressly retained for all the purposes mentioned in this paragraph and applications may be made to this Court in this cause by any party interested upon such notice as the Court may direct; all provisions with respect to method of procedure including notice now fixed by order of this Court shall continue in effect until otherwise directed." That decree was based in part upon the jurisdiction conferred upon this court by the Mortgage Guaranty Corporations' Rehabilitation Act (P.L. 1934ch. 3; R.S. 17:46-1 et seq.) and the general equity jurisdiction of the court.
While the statute is applicable to the proceedings initiated by this petition, the court's jurisdiction continues under the reservation contained in the decree of June 22d 1937, in order that the Plan of Rehabilitation may be fully carried out and the trust in that decree created continued under the supervision of the court until completed.
That the court had power and authority to make its decree of June 22d 1937, approving the Plan of Rehabilitation can no longer be challenged. The constitutionality of the basic statute was sustained in In re North Jersey Title Insurance Co.,120 N.J. Eq. 608; 187 Atl. Rep. 146; Savings Investment, c., Co. v.Associated, c., Co., 122 N.J. Eq. 95; 192 Atl. Rep. 584.
Throughout the administration of the trustees of Fidelity Union Title and Mortgage Guaranty Company the validity of the proceedings had was not questioned. These same proceedings have remained open, and since 1937 this court has dealt with numerous applications involving the respective interests of investors and of the petitioner in withdrawn mortgage investments, as well as questions between petitioner and the trustee arising under the Indenture. The trust originally administered under the *Page 355 
court's supervision will continue until completed even though the emergency which gave rise to the trust may no longer exist. The Plan of petitioner for which it seeks the court's approval is proposed in furtherance and fulfillment of the objectives of the Plan of Rehabilitation approved by the decree of June 22d 1937. The determination whether the Plan should now be approved rests in the discretion of the court, in the exercise of the powers clearly reserved to it in the 1937 decree.
The court is satisfied from the testimony produced before it that the best interests of the bondholders and stockholders will be conserved by the adoption of the Plan as proposed. An order to that effect will be advised when presented.