# IN THE COURT OF APPEALS OF IOWA

No. 19-1907
Filed March 18, 2020

**IN THE INTEREST OF O.S.,**
**Minor Child,**

**A.S., Mother,**
　　　Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Scott Strait, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

J. Joseph Narmi, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Tricia Scheinost of Southwest Iowa Law Office, Council Bluffs, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., Schumacher, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**GAMBLE, Senior Judge.**

A mother appeals from the termination of her parental rights to her child, O.S.[1]  On appeal, she (1) argues she should have been granted an extension to file her petition on appeal, (2) challenges the statutory grounds authorizing termination, (3) argues termination is not in O.S.'s best interest, and (4) claims the juvenile court erred in declining to apply an exception under Iowa Code section 232.116(3) (2019) to preclude termination.  We affirm.

## I. Scope and Standard of Review

We review termination proceedings de novo.  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).  "We give weight to the factual determinations of the juvenile court but we are not bound by them.  Grounds for termination must be proven by clear and convincing evidence.  Our primary concern is the best interests of the child." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citations omitted).

We use a three-step process to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).  First, we determine whether a ground for termination under section 232.116(1) has been established.  *See id.* at 472–73.  If a ground for termination has been established, then we consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights."  *Id.* at 473 (citation omitted).  Then we consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights."  *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)).

---

[1] The juvenile court also terminated the father's parental rights.  He does not appeal.

## II. Discussion

### A. Due Process Claim

As a preliminary issue, we address the mother's claim the supreme court should have granted an extension to file her petition on appeal until fifteen days after the transcript of her termination hearing was submitted. The mother recognizes Iowa Rule of Appellate Procedure 6.201(1)(b) requires "[a] petition on appeal . . . be filed with the clerk of the supreme court within 15 days after the filing of the notice of appeal with the clerk of the district court" and provides, "The time for filing a petition on appeal shall not be extended." She argues the expedited appeal process required her to prepare the petition on appeal without benefit of the termination hearing transcript. She contends this violated her due process rights.[2]

"We . . . recognize the petitioner-appellant usually does not receive the transcript prior to preparing the petition on appeal—the length of the proceedings and the manner of transcript preparation in Iowa are impediments to having transcripts prepared that quickly." *T.S.*, 868 N.W.2d at 433. However, "there is no per se due process violation inherent in the unavailability of the hearing transcript for termination appeals." *Id.* at 434. Moreover, this court and our supreme court have determined the expedited appeal process in itself does not violate a parent's due process rights. *See In re C.M.*, 652 N.W.2d 204, 211 (Iowa 2002); *In re R.K.*,

---

[2] "The Fourteenth Amendment to the federal constitution provides no state shall 'deprive any person of life, liberty, or property, without due process of law.' The due process clause of the Iowa Constitution generally has been interpreted as identical in 'scope, import, and purpose to the federal clause.'" *In re T.S.*, 868 N.W.2d 425, 432 (Iowa Ct. App. 2015) (quoting *Exira Cmty. Sch. Dist. v. State,* 512 N.W.2d 787, 792 (Iowa 1994)).

649 N.W.2d 18, 21–22 (Iowa Ct. App. 2002). Therefore, we conclude the mother's due process rights were not violated by the expedited process or unavailability of the hearing transcript.

### B. Statutory Grounds

The mother challenges the statutory grounds authorizing termination.[3] The juvenile court authorized termination pursuant to Iowa Code section 232.116(1)(d), (e), (h), and (*l*). When, as here, the juvenile court terminates on multiple statutory grounds, we may affirm on any ground. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to address grounds for termination under section 232.116(1)(h). Iowa Code section 232.116(1)(h) authorizes termination of a parent's parental rights when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother makes no argument explicitly challenging the first three elements. And to the extent the mother challenges the first three elements, we find them satisfied. As to the fourth element, we find O.S. cannot be returned to the mother's care.[4]

---

[3] The mother makes a general argument challenging the statutory grounds.

[4] The mother argues O.S. should be returned to her care because "she currently has custody of her [other] children on the weekend." And she states "she has unsupervised visitation with her [other children] every single weekend." (Emphasis removed.) But we note the temporary custody order relating to the mother's older two children provides her with supervised visitation, not unsupervised. Moreover, those children are in an entirely different situation. They are several years older

This case arose from concerns of methamphetamine use and domestic violence within the familial home. Since O.S.'s removal, the mother has made negligible progress toward sobriety. The mother admitted to using methamphetamine as recently as two and half months prior to the termination hearings.[5] Moreover, this was not an isolated incident—she admitted to actively using over a two-month period. Furthermore, a case worker testified the mother previously admitted to using drugs roughly three weeks prior to the first termination hearing date.

The mother failed to complete numerous drug screenings. Between July 2018 and July 2019, the mother missed thirty-five of forty-one ordered drug screens. In the roughly month-long gap between the two termination hearing days, the mother missed three ordered drug screens. We presume these missed drug screens would have resulted in positive screens. *See, e.g.*, *In re L.B.*, No. 17-1439, 2017 WL 6027747, at *2 (Iowa Ct. App. Nov. 22, 2017); *In re C.W.*, No. 14-1501, 2014 WL 5865351, at *2 (Iowa Ct. App. Nov. 13, 2014) ("She has missed several drug screens, which are thus presumed 'dirty,' i.e., they would have been positive for illegal substances.").

The mother never successfully completed any treatment program. She also missed half of her substance-abuse meetings scheduled between the termination hearing dates. The mother's ongoing substance-abuse issues weigh against

---

than O.S.—who was less than two years old at the time of termination—and have a greater capacity to self-protect. They also return to their father's care following visitation.

[5] The termination hearing was held over two days, August 14, 2019 and September 20, 2019. The mother admitted to using on July 5.

reunification. *See In re J.P.*, No. 19-1633, 2020WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) ("A parent's methamphetamine use, in itself, creates a dangerous environment for children.").

We have concerns beyond the mother's substance abuse. For instance, her housing is not stable. On the first hearing day, a social worker indicated the mother was living with her own mother.[6] But on the second hearing day, the mother admitted she moved into a hotel with her boyfriend for a period of time before ultimately returning to her mother's home. The mother also has frequent brushes with the law. In 2019 alone, she was jailed in three separate counties. And the juvenile court took judicial notice that there was an active warrant for the mother's arrest. She was taken into custody after the first day of the termination hearing.

While the mother's participation in visitation improved after she was released from jail in March of 2019, we note the mother has failed to progress to unsupervised visits with O.S.[7] Without the necessary progression from supervised visits to unsupervised visits or trial home visits, "we cannot say [O.S.] could have returned to the mother's care." *See In re C.N.*, No. 19-1961, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5 2020).

For these reasons, we find the first step in our review reveals the State established a ground for termination under section 232.116(1).

---

[6] The mother later clarified she had lived there for roughly a month.

[7] During visitation, the mother often spent time on her phone rather than engaging with O.S. And she has not been open to prompts from case workers to shift her focus from her phone to O.S. She also brought men that O.S. is unfamiliar with to visitations.

**C. Best Interest**

Next, we consider whether termination is in O.S.'s best interest. In considering the best interest of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

We conclude termination is in O.S.'s best interest. Considering the mother's past methamphetamine use, her failure in treatment, and her inconsistent visitation performance as indicators of what the future likely holds, we foresee an unsteady and unreliable future for the mother, which is not suitable for O.S. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) ("In seeking out those best interests, we look to the child's long-range as well as immediate interests. This requires considering what the future holds for the child if returned to the parents. When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." (citations omitted)). Unfortunately, the mother cannot provide O.S. with a safe home. *See P.L.*, 778 N.W.2d at 37 (recognizing the primary consideration in determining a child's best interest is "the child's safety" (citation omitted)). Termination would free O.S. for adoption, and according to the social worker's report to the court, "[O.S.] has more than one relative who have expressed interest in adoption." Adoption would provide O.S. with a safe and stable forever home.

Accordingly, on the second step of our review, we conclude termination is in O.S.'s best interest. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., specially concurring) (noting the child's safety and need for permanency are the "defining elements" under the best-interest analysis).

### D. Exceptions to Termination

We complete our three-step analysis by considering if section 232.116(3) should be applied to preclude termination. "[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *A.S.*, 906 N.W.2d at 476. Even if the parent proves an exception, we are not required to apply the exception. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). We exercise our discretion, "based on the unique circumstances of each case and the best interests of the child," to determine whether the parent-child relationship should be saved. *Id.* (citation omitted).

Section 232.116(3)(a) permits the court to forgo termination when "[a] relative has legal custody of the child." The mother contends termination is not necessary because the child is safely placed with a relative. But we find section 232.116(3)(a) inapplicable because DHS has legal custody of O.S. and merely placed O.S. with a relative. *See C.N.*, 2020 WL 567283, at *2 (finding section 232.116(3)(a) does not apply when DHS has legal custody of the children and places them in the physical care of a relative); *In re W.H.*, No. 19-1003, 2019 WL 4297924, at *1 (Iowa Ct. App. Sept. 11, 2019) (same).

The mother also contends the juvenile court should have applied section 232.116(3)(c) to forgo termination. Section 232.116(3)(c) permits the court to forgo termination when "[t]here is clear and convincing evidence that the termination

would be detrimental to the child at the time due to the closeness of the parent-child relationship." While there is a bond between the mother and O.S., it "is not so strong to overcome the significant safety risks that remain." *In re A.F.*, No. 19-1668, 2020 WL 569643, at *2 (Iowa Ct. App. Feb. 5, 2020).

Therefore, on the third step of our review, we conclude no exception in section 232.116(3) applies to preclude termination of parental rights

## III. Conclusion

The juvenile court was correct in terminating the mother's parental rights.

**AFFIRMED.**